1  SEYFARTH SHAW LLP
   Nick C. Geannacopulos (State Bar No. 114822)
2  Michael J. Burns (State Bar No. 172614)
   560 Mission Street, Suite 3100
3  San Francisco, California 94105
   Telephone: (415) 397-2823
4  Facsimile: (415) 397-8549

5  Attorneys for Respondent
   CITISCAPE PROPERTY MANAGEMENT GROUP LLC
6

7

8                    UNITED STATES DISTRICT COURT

9          IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

10 SERVICE EMPLOYEES INTERNATIONAL    )   Case No. **CV 09 0608**
   UNION, LOCAL 1877                   )
11                                     )
                                       )
12          Petitioner,                )   **NOTICE OF REMOVAL OF CIVIL
                                       )   ACTION TO THE UNITED STATES
13      v.                             )   DISTRICT COURT**
                                       )
14 CITISCAPE PROPERTY MANAGEMENT       )
   GROUP LLC; DOES I THROUGH X,        )
15                                     )
          Respondents.                 )
16 _____)

17      **TO THE UNITED STATES DISTRICT COURT:**

18      Please take notice that, pursuant to 28 U.S.C. §§ 1331, 1441(a) and (b) and 1446,

19 CITISCAPE PROPERTY MANAGEMENT GROUP LLC "Respondent") hereby removes the

20 above-entitled action from the Superior Court of California in the County of San Francisco to the

21 United States District Court for the Northern District of California on the basis of a federal

22 question arising under 29 U.S.C. § 185(a) [The Labor Management Relations Act].  In support of

23 removal, Respondent states:

24                          **BACKGROUND**

25      1.      Respondent is informed and believe that on or about December 11, 2008,

26 SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1877 ("Petitioner") filed a

27 Petition to Compel Arbitration (the "Petition") in the Superior Court of the State of California in

28

_____
        Notice of Removal of Civil Action to United States District Court

1   the City and County of San Francisco, entitled *Service Employees International Union, Local*

2   *1877 v. Citiscape Property Management Group LLC*, Case No. CPF-08-509051.

3          2.     On January 12 2009, the Petition was served on Respondent's Agent for Service

4   of Process.  A true and correct copy of the Petition is attached as **Exhibit A**.

5          3.     This Notice of Removal is timely filed as it is filed within thirty (30) days of the

6   receipt by Respondent of a copy of the Petition.  28 U.S.C. §1446(b).

7          4.     __JURISDICTION__:  This action is a civil action of which this Court has original

8   jurisdiction under 28 U.S.C. § 1331, and is thus one which Respondent is entitled to remove to

9   this Court pursuant to 28 U.S.C. § 1441, in that it necessarily arises under Section 301 ("Section

10  301") of the Labor Management Relations Act, 29 U.S.C. § 185.  Section 301 provides that:

11  "[s]uits for violation of contracts between an employer and a labor organization representing

12  employees in an industry affecting commerce . . . may be brought in any district court of the

13  United States having jurisdiction of the parties without regard to the amount in controversy or

14  without regard to the citizenship of the parties."  *Firestone v. Southern California Gas Co.*, 219

15  F.3d 1063, 1065 (9th Cir. 2000), *reh'g denied* 281 F.3d 801 (9th Cir. 2002).

16         5.     Petitioner's Petition seeks to compel Respondent to arbitrate a dispute Petitioner

17  has with Respondent.

18         6.     According to the Petition[1], Petitioner is a labor organization which exists for the

19  purpose of providing standards of wages, hours, and working conditions, and negotiating and

20  executing collective bargaining agreements on behalf of employees in an appropriate collective

21  bargaining agreement.  Petition, ¶1.

22         7.     According to the Petition, Respondent is an employer within the meaning of the

23  Labor Management Relations Act of 1947 and employs members of Petitioner.  Petition, ¶2.

24  ///

25  ///

26  —————————————

27  [1]      For the purposes of removal only, Respondent accepts the allegations set forth in
    the Petition as being true and correct.  It denies, however, that it is a party to any collective
    bargaining agreement and/or any other agreement with Petitioner with respect to the at issue
28  property.

8.     According to the Petition, Petitioner and Respondent were parties to a collective bargaining agreement ("CBA") governing the terms and conditions of Petitioner's members' employment.  Petition, ¶3.

9.     According to the Petition, Petitioner contends that Respondent has denied it is "bound" by the CBA since June 2007.  Petitioner also contends that Respondent failed to respond to its February 20, 2008 request to select an arbitrator.  Petition, ¶¶4, 6.  Petitioner further contends that at all material times, Respondent has failed and refused to comply with the CBA as well as the grievance procedure and arbitrations provisions of that agreement and has failed and refused to submit the dispute for resolution pursuant to the CBA.  Petition, ¶7.

10.     Because the Petition alleges a violation of an alleged collective bargaining agreement between Respondent and Petitioner, this Court has original jurisdiction of this case pursuant to Section 301.  *See generally Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985) (where evaluation of state law claim is "inextricably intertwined" with the terms of a collective bargaining agreement, such claim actually arises under federal labor law and is preempted).

11.     **INTRADISTRICT ASSIGNMENT**:  Venue properly lies with this Court pursuant to 28 U.S.C. §§ 1391(a) and 1441(a) because the state court action was filed in this district, and this is the judicial district in which the action arose.

12.     Respondent has not yet responded to the Petition, but will do so in accordance with Fed. R. Civ. P. 81(c).

13.     Respondent, upon filing this Notice of Removal, is also filing a copy of this Notice of Removal with the Clerk of the Superior Court of the County of San Francisco to effect this removal in accordance with 28 U.S.C. § 1446(d).

///

///

///

///

///

1    WHEREFORE, Respondent gives notice that the above action, which was pending in the

2   Superior Court of California, County of San Francisco, is hereby removed to the United States

3   District Court for the Northern District of California.

4   DATED: February 10, 2009

5                                                                SEYFARTH SHAW LLP

6                                                        By

7                                                                Michael J. Burns
                                                         Attorneys for Respondent
8                                                        CITISCAPE PROPERTY MANAGEMENT
                                                         GROUP LLC
9   SFI 28346540.1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Removal of Civil Action to United States District Court

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Antonio Ruiz, Bar No. 155659<br>Weinberg, Roger & Rosenfeld<br>1001 Marina Village Parkway, Suite 200<br>Alameda, CA 94501 | |

TELEPHONE NO.: (510) 337-1001    FAX NO.: (510) 337-1023
ATTORNEY FOR *(Name):* Petitioner, SEIU Local 1877

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME: SEIU Local 1877 v. Citiscape Property Management Group LLC

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | CPF - 08 509051 |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400-3.403) |
|---|---|---|
| [ ] Auto (22)<br>[ ] Uninsured motorist (46) | [ ] Breach of contract/warranty (06)<br>[ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03)<br>[ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09)<br>[ ] Insurance coverage (18) | [ ] Mass tort (40)<br>[ ] Securities litigation (28) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Product liability (24) | **Real Property** | [ ] Insurance coverage claims arising from the |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | above listed provisionally complex case |
| [ ] Other PI/PD/WD (23) | condemnation (14) | types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [X] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
        issues that will be time-consuming to resolve              in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [ ] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [ ] punitive

4. Number of causes of action *(specify):* Petition to Compel Arbitration

5. This case [ ] is [X] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 9, 2008

Antonio Ruiz
_____
(TYPE OR PRINT NAME)                                    ▶ _____
                                                         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**
Legal
Solutions
& Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

Ex. A

1   ANTONIO RUIZ, Bar No. 155659
    WEINBERG, ROGER & ROSENFELD
2   A Professional Corporation
    1001 Marina Village Parkway, Suite 200
3   Alameda, California 94501-1091
    Telephone 510.337.1001
4   Fax 510.337.1023

5   Attorneys for Petitioner

6

7

8                IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    IN AND FOR THE COUNTY OF SAN FRANCISCO

10

11  SERVICE EMPLOYEES INTERNATIONAL      ) Case No.
    UNION, LOCAL 1877,                    )
12                                        ) **PETITION TO COMPEL**
               Petitioner,               ) **ARBITRATION**
13                                        )
           v.                            )
14                                        )
    CITISCAPE PROPERTY MANAGEMENT        )
15  GROUP LLC; DOES I THROUGH X,         )
                                          )
16             Respondents.              )
                                          )
17  _____ )

18

19  TO:   THE HONORABLE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND
          FOR THE ABOVE ENTITLED COUNTY
20
21          The Petition of Petitioner for an Order Compelling Arbitration respectfully shows:

22          1.     Petitioner, Service Employees International Union, Local 1877, is a labor

23  organization doing business in the State of California and is a voluntary, unincorporated

24  association.  Petitioner exists in part for the purpose of providing standards of wages, hours, and

25  working conditions, and negotiating and executing collective bargaining agreements on behalf of

26  employees in an appropriate collective bargaining unit.

27          2.     Respondent, Citiscape Property Management Group LLC, Does I through X,

28  inclusive is an employer within the meaning of the Labor-Management Relations Act of 1947 (29

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

_Petition to Compel Arbitration_

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

DEC 1 1 2008

GORDON PARK-LI, Clerk
BY: MICHAEL RAYRAY
                    Deputy Clerk

1  U.S.C. §151 et seq.) and employs members of Petitioner.

2      3.      At all times material herein, Petitioner and Respondents, and each of them, have

3  been parties to a written collective bargaining agreement to which each of the parties is bound.  A

4  copy of the collective bargaining agreement is attached hereto, labeled "Exhibit A," and

5  incorporated herein by reference.

6      4.      Since on or about June 2007, a dispute has existed over the applicability of the

7  collective bargaining agreement.  A copy of said grievance is attached hereto, labeled as Exhibit

8  "B", and incorporated herein by reference.

9      5.      Section 17 of the collective bargaining agreement provides for a grievance

10  procedure wherein the parties are bound to submit all disputes to an arbitrator, empowered to make

11  final and binding decisions.

12      6.      Respondent has taken the position in a letter dated June 27, 2007, that it is not

13  bound by any agreement with Petitioner.  A copy of the letter is attached hereto as Exhibit C.  By

14  e-mail dated February 20, 2008, Petitioner's representatives forwarded the FMCS Panel Request to

15  the Respondent's representative and informed him of the need to strike names for the selection of

16  an arbitrator as provided for by the grievance procedure under the collective bargaining agreement.

17  A true and correct copy of the e-mail is attached as Exhibit "D" to this petition.  To this date,

18  Respondents' representative has not responded to the request.

19      7.      At all times material herein, Petitioner has complied with all the terms and

20  conditions of said Collective Bargaining Agreement, but Respondents, and each of them, have

21  failed and refused to so comply, and still so fail and refuse to comply, with the said grievance and

22  arbitration provisions of the agreement, or to submit the dispute for resolution pursuant to the

23  provisions of said grievance and arbitration provisions.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

- 2 -
Petition to Compel Arbitration

1      WHEREFORE, Petitioner prays that an Order of this Court be made pursuant to the

2  provisions of Code of Civil Procedure §1281 et seq. ordering Respondents, and each of them, to

3  submit the outstanding dispute to the grievance and arbitration procedures set forth in the

4  provisions of the collective bargaining agreement referred to herein, and to otherwise comply with

5  the grievance and arbitration procedures required by said agreement as set forth therein; for

6  reasonable attorneys' fees; for costs of suit; and for such other and further relief as to the Court may

7  seem just and proper.

8  Dated: December _4_, 2008

9

10               WEINBERG, ROGER & ROSENFELD
                 A Professional Corporation

11

12            By: _____
                 ANTONIO RUIZ

13               Attorneys for Petitioner

14  120303/514208

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

- 3 -

Petition to Compel Arbitration

1

VERIFICATION

2      I am one of the attorneys for SERVICE EMPLOYEES INTERNATIONAL UNION,

3  LOCAL 1877, in the above entitled action.  I have read the foregoing document, and know the

4  contents thereof; and I certify that the same is true of my own knowledge, except as to those

5  matters which are therein stated upon my information or belief, and as to those matters, I believe

6  them to be true.

7      I make this verification as attorney and agent for SERVICE EMPLOYEES

8  INTERNATIONAL UNION, LOCAL 1877, with authority to make said verification and because

9  as attorney the facts set forth in said document are within my knowledge and I am more familiar

10  with such facts.  I certify (or declare) under penalty of perjury that the foregoing is true and correct.

11      Executed on December _Q_ , 2008 at Alameda, California.

12

13

14  ANTONIO RUIZ

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510 337 1001

# COLLECTIVE BARGAINING AGREEMENT

### BETWEEN

## CONDOMINIUM COOPERATIVE EMPLOYERS COUNCIL
### OF SAN FRANCISCO

### AND

### SERVICE EMPLOYEES UNION
### LOCAL 1877
### AFL-CIO

Effective October 1, 2004  –  September 30, 2009

## LOCATIONS MANAGED BY
## CITISCAPE PROPERTY MANAGEMENT GROUP LLC

**EXHIBIT A**

# TABLE OF CONTENTS

Page

Section 1.  RECOGNITION
    1.1.  Bargaining Representative .................................................. 2
    1.2  Strikes and Work Stoppages
    1.3  Discrimination
    1.4  Contractors and Subcontractors

Section 2.  UNION MEMBERSHIP
    2.1  Membership as a Condition of Employment ...................... 3
    2.2  Discharge for Failure to Join the Union
    2.3  Recognition of Shop Stewards and Regional Shop Stewards
    2.4  Visitation by Union Representatives
    2.5  Bulletin Board
    2.6  Dues Collection
    2.7  Dues Check Off Form
    2.8  Hold Harmless

Section 3.  EMPLOYERS COUNCIL MEMBERSHIP
    3.1  Employers Council Membership .................................... 5

Section 4.  HIRING
    4.1  Filling of Vacancies and New Positions ......................... 5
    4.2  Probation Period for New Employees
    4.3  Employer Sole Judge of Qualifications

Section 5.  SENIORITY
A.  SENIORITY DEFINED ........................................................ 6
    5.1  Definition ............................................................... 6
B.  SENIORITY DURING:
    5.2  Periods of Absence for Worker's Compensation ............ 6
    5.3  Reinstatement after Termination
    5.4  Other Authorized Reasons
C.  LAYOFF AND RECALL ........................................................
    5.5  Layoffs .................................................................. 7
D.  NOTICE OF LAYOFF
    5.6  Notice of Requirement and Pay in the Event of Layoff ... 7
E.  RECALL
    5.7  Notice Requirement for Recall .................................... 7
    CONSIDERATIONS FOR FILLING VACANT POSITIONS
    5.8  Considerations ....................................................... 7

Section 6.  VACATIONS
    6.1  Vacation – Years One (1) through Four (4) ................... 8
    2  Vacation – Years Five (5) through Nine (9)
    Vacation – Years Ten (10) through Twenty-Four (24)
    Vacation – Years Twenty-Five or More (25+)

6.5    Pro-Rated Vacation in the Event of Termination
6.6    Allowable Vacation Periods
6.7    Absence from Service
6.8    Change in Ownership
6.9    Severance of Employment Relations
6.10   Vacation in Excess of Contract
6.11   When Vacation Pay is to be Paid / Shift Differential
6.12   Vacation Without Interruption / Call Back Pay
6.13   Holidays During Vacation
6.14   Pay in Lieu of Vacation

Section 7.     HOLIDAYS
7.1    Holidays Observed
7.2    Federal Observance Takes Precedence
7.3    Eligibility .......................................................................... 10
7.4    Pay Rate for Holidays

Section 8.     SICK LEAVE
8.1    Rate at Which Leave is Earned
8.2    When Sick Leave is Payable
8.3    Payable for Regularly Scheduled Workdays .......................... 11
8.4    Sick Pay for Regular Part-Time Employees
8.5    Unused Sick Pay
8.6    Integration with Disability and Worker's Compensation
8.7    Verification
8.8    False Claims
8.9    Purpose of Sick Leave Benefits

Section 9. WELFARE FUND, PENSION TRUST AND RETIREMENT
               SAVINGS PLAN
A.     WELFARE FUND ...............................................................
9.1    Purpose of the Welfare Fund
9.2    Welfare Fund Contribution
9.3    Payment .......................................................................... 13
9.4    Administration ................................................................. 13

B.     PENSION TRUST
9.5    Purpose of the Pension and Trust Fund
9.6    Pension and Trust Fund Contribution in Dollars
9.7    Payment .......................................................................... 14

C.     REGULATIONS
9.8    Hours Considered for Computing Contributions
9.9    Contributions During Sick Leave
9.10   Change of Ownership ......................................................... 15
9.11   401(k)-type Retirement Savings Plan

Section 10.    PART-TIME, RELIEF AND CASUAL EMPLOYEES
10.1   Regular Part-Time Employee Defined
10.2   Relief Employee Defined
10.3   Casual Employee Defined ................................................... 15

        10.4   Holiday Pay
        10.5   Additional Available Hours
        10.6   Emergency Relief

Section 11.   DEFINITIONS OF CLASSIFICATIONS .................... 16
        11.1   "Premises"
        11.2   "Appurtenances"
        11.3   "Clean"
        11.4   "Services Performed by Contractors"
        11.5   "Handyperson"
        11.6   "Janitor"
        11.7   "Resident Handyperson or Janitor"
        11.8   "Head Door Attendant"
        11.9   " Door Attendant "
        11.10  "Watchperson"
        11.11  "Receiving Clerk"
        11.12  Performance of Janitorial Duties
        11.13  Emergencies

Section 12.   RATES OF PAY ......................................
A.      RATES OF PAY SHALL BE: ................................... 20
        12.11  Concierge job title                                 20
        12.12  Janitor Short Shift Premium
        12.13  6:00 PM to 6:00 AM Pay Premium

B.      BEGINNERS' RATES OF PAY .................................. 22
        12.14  Beginners' Rates of Pay
        12.15  Beginners' Rates of Pay Exception

C.      PAYDAYS ................................................. 23
        12.16  Regular Pay Periods
        12.17  Pay Upon Termination or Layoff
        12.18  Pay by Mail
        12.19  Recording on Time

Section 13.   WORK DAY, WORK WEEK, HOURS AND OVERTIME ........... 23
A.      WORK DAY ................................................ 23
        13.1   Eight (8) Hour Work Day
        13.2   Four (4) Hour Work Day -- Short Shift
        13.3   Day's Work Defined
        13.4   Resident Handyperson and Janitor
B.      WORK WEEK
        13.5   Work Week Defined                                   24
C.      SHORT SHIFT ............................................. 24
        13.6   Short Shift Defined
D.      SPLIT SHIFT ............................................. 24
        13.7   Split Shift
E.      NIGHT SHIFT ............................................. 24
        13.8   Night Shift Defined
F.      WORK SCHEDULE ..........................................
        13.9   Work Schedule Defined                               25

G.    OVERTIME
    13.10  Overtime Defined ............................................. 25
    13.11  Overtime Four (4) Hour Minimum Pay
    13.12  Overtime Eight (8) Hour Pay Requirement
H.    MINIMUM CALL
    13.13  Required Notice ............................................. 26
    13.14  Pay Requirement
I.    COMBINATION JOB
    13.15  Combination Job Defined ................................. 26

Section 14.    LUNCH AND REST PERIODS ................................
A.    LUNCH PERIODS ............................................. 26
    14.1    Lunch Periods ............................................. 26
B.    REST PERIODS
    14.2    Rest Periods ............................................. 26

Section 15.    LEAVES OF ABSENCE
A.    UNPAID LEAVE ............................................. 27
    15.1    Leaves of Absence ....................................... 27
B.    SENIORITY VACATION LEAVES OF ABSENCE
    15.2    Seniority Leaves ......................................... 27
C.    JURY DUTY
    15.3    Pay Requirements ........................................ 27
    15.4    Schedule Requirements
    15.5    Hardship
D.    BEREAVEMENT LEAVE
    15.6    Death in the Immediate Family .......................... 28
    15.7    Leave of Absence for Union Business

Section 16.    GENERAL PROVISIONS
    16.1    Uniforms and Laundry ................................... 28
    16.2    Dressing Rooms or Lockers
    16.3    Break Room
    16.4    Quarters
    16.5    Work Rules
    16.6    Breakage
    16.7    Acts of God
    16.8    Employee Handling of Funds
    16.9    Fidelity Bonds

Section 17.    GRIEVANCE, DISCHARGE AND RETIREMENT
    17.1    Referral to a Board of Adjustment and Arbitration ....... 30
    17.2    Precedent Setting
B.    DISCHARGE
    17.3    In the Event of Discharge ............................... 32
    17.4    Notice Requirement for Terminations
C.    RETIREMENT
    17.5    Employee Retirement ..................................... 32

Section 18.    SAVINGS CLAUSE
    18.1    Savings Clause ........................................... 32

Section 19.    LABOR MANAGEMENT COMMITTEE
    19.1    Establishment of a Labor Management Committee .................................... 33

Section 20.    MANAGEMENT RIGHTS
    20.1    Management Rights Clause ...................................................... 33

Section 21.    TERM OF AGREEMENT
    21.1    Term of Agreement .............................................. 34

ADDENDUM A.  CONDO COUNCIL MEMBERSHIP LISTING ............................ 35

THE CONDOMINIUM COOPERATIVE APARTMENT EMPLOYERS
COUNCIL OF SAN FRANCISCO
AND
SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1877

## AGREEMENT

Section 0.   GENERAL INFORMATION

**0.1**   **Duration of Contract**

October 1, 2004 through September 30, 2009

**0.2**   **Parties to the Agreement**

AGREEMENT, by and between CONDOMINIUM COOPERATIVE APARTMENT
EMPLOYERS COUNCIL OF SAN FRANCISCO, party of the first part, on behalf
of its members at the locations listed in Addendum "A", hereinafter referred to as
the "Employer", and the SERVICE EMPLOYEES INTERNATIONAL UNION,
LOCAL 1877, affiliated with the Service Employees International Union, AFL-
CIO, party of the second part, hereinafter referred to as the "Union", acting on
behalf of the Employees in the classifications specified in Section 11 below.

**0.3**   **Intent**

It is the intent of the parties to this Agreement that all Employees, Union
Representatives, Owners and Managers treat each other with dignity, respect,
courtesy and trust, and that these principles shall apply in all dealings with
residents and guests.  It is the intent of the parties that the provisions of this
Agreement further these goals.

## Section 1.   RECOGNITION

### 1.1.   Bargaining Representative

The Council recognizes the Union as the exclusive collective bargaining representative for all job classifications specified herein who are employed in either a condominium or a cooperative apartment owned by a signatory employer in the City and County of San Francisco.

### 1.2   Strikes and Work Stoppages

During the term of this Agreement, the Union agrees that its members will not engage in nor will the Union authorize or condone a strike, concerted sick-out, boycott or other type of work stoppage.  Upon notification of a violation of this paragraph by members of the Union, the Union agrees to use its best good faith efforts to end such violation as quickly as possible.

The Employer agrees not to engage in any lockouts.

Notwithstanding the above, the observance of a bona fide picket line of another labor organization (sanctioned by the San Francisco Labor Council) by an individual member of the Union shall not constitute a breach of this Agreement. The Union shall not command, order or direct employees to exercise their rights under the foregoing clause but shall have the right to advise employees whether the strike or picket line is sanctioned, as to the facts of the particular labor dispute and as to the employee's rights under the foregoing clause. Each individual employee shall have the right to make his/her free choice to cross or not to cross any sanctioned picket line as defined above. The Union shall not coerce individual employees with respect to this matter, but may give its recommendation and the reasons for such recommendation.

### 1.3   Discrimination

There shall be no discrimination by the Employer or by the Union against employees on account of union membership or union activities.  Neither the Employer nor the Union shall discriminate against any employee or applicant for employment on account of race/color, national origin/ancestry, sex, religious creed, age, mental or physical disability, veteran status, medical condition, marital status, or sexual orientation.

### 1.4   Contractors and Subcontractors

All contractors and subcontractors performing work of the classifications listed in this Agreement at any location listed in this Agreement shall comply with all economic and non-economic provisions thereof. In the event that any Employer

2

contracts out any work covered under this Agreement, the incoming contractor or subcontractor shall hire all of the affected employees (subject to paragraph 2 below) and recognize their original seniority for all purposes.

If the Building Owner(s) modifies, or approves, a reduced staffing schedule for the incoming contractor or subcontractor which causes a reduction in any classification, it shall be implemented in accordance with the Layoff provisions of this Agreement. Employees laid off in accordance with this provision shall have recall rights with the incoming contractor or subcontractor.

If the Building Owner(s) terminates the services of a contractor or subcontractor and resumes direct employment of the employees performing work covered under this Agreement, such change shall be handled in accordance with this Section, and the obligation to recall laid off employees in accordance with the terms of this Agreement would be transferred to the Building Owner(s).

"Contractor" for the purpose of this Section shall include other entities such as property management companies which become the Employer of affected employees.

## Section 2.   UNION MEMBERSHIP

### 2.1   Membership as a Condition of Employment

Membership in the Union on or after thirty-one (31) days following the beginning of employment or the effective date of this Agreement, whichever is later, shall be a condition of employment to the extent consistent with the law.

### 2.2   Discharge for Failure to Join the Union

Upon satisfactory proof from the Union, the Employer agrees to discharge any employee who fails to make application for and complete membership in the Union or, alternatively, fails to tender initiation fees and dues uniformly required as a condition of acquiring or retaining membership.

### 2.3   Recognition of Shop Stewards and Regional Shop Stewards

The Employer will recognize Shop Stewards and Regional Shop Stewards, designated as such in writing by the Union, as representatives of the Union for the purpose of presenting the Union's interpretation of the contract on a day-to-day basis. Only such Stewards so designated by the Union in writing shall have the authority to act as Shop Stewards. Union activities shall not interfere with their regular job duties except as mutually agreed between the Stewards and the Employer. Regional Shop Stewards designated in writing by the Union shall have the authority to represent members in any worksite covered under this

Agreement. The Employer shall not be obligated to deal with any Shop Steward until written confirmation of his/her appointment is received. When a Regional Shop Steward is called to perform Union duties in any building other than the building where he/she works, such union duties shall be performed on the Regional Shop Steward's own time.

## 2.4 Visitation by Union Representatives

Duly authorized representatives of the Union including Regional Shop Stewards, not to exceed two (2) at any one time, who shall show their credentials to the Employer or its representative prior to each visit, shall be permitted to visit the building for the purpose of observing conditions under which the employees are working and to see that conditions of this Agreement are being observed; provided, however, that such visits shall be made in the employee's quarters whenever possible, or in some quarters within the building designated by the Manager. Such visits shall not interfere with the proper conduct of business or the performance of work. The Employer agrees to cooperate in arranging such visits, and shall have the right to take reasonable steps to ensure that such visits do not interfere with the performance of work.

## 2.5 Bulletin Board

When there are five (5) or more employees in a building, the Employer shall provide a bulletin board conveniently located for the use of the Union in posting notice of official business of the Union. The Union agrees that it will not distribute handbills, posters or other literature pertaining to the affairs of the Union within the building except to employees represented by the Union in accordance with Section 2.4 above.

## 2.6 Dues Collection

Subject to receipt of a signed request and authorization from an employee, the Employer agrees to deduct union dues, initiation fees and voluntary employee contributions to the Union's Committee on Political Education (COPE) from the employee's pay, and shall monthly remit such amounts to the Union. This shall be done the first payroll of every month. The authorization form shall be mutually agreed upon by the Employer and the Union.

## 2.7 Dues Check Off Form

A copy of the Dues Check Off Form is contained in Appendix A.

## 2.8 Hold Harmless

4

The Union shall indemnify, defend and hold the Employer harmless against any and all claims, demands, suits or other forms of liability against the Employer in reliance upon payroll deduction authorization cards submitted to the Employer.

## Section 3.   EMPLOYERS COUNCIL MEMBERSHIP

### 3.1    Employers Council Membership

All Employers joining the Condominium Cooperative Employers Council of San Francisco subsequent to the execution of this Agreement shall have the right to become parties to the Agreement, provided that written notice of such membership shall be given to the Union and after becoming members such parties shall be entitled to the benefits and subject to the obligations hereof.

Any such Employer who had been paying higher wages or providing superior benefits than those contained in the Agreement prior to such membership shall not reduce any wages or benefits upon becoming a party to this Agreement and these higher wages or superior benefits shall not serve as a precedent in determining any terms and conditions of this Agreement.

All Condominium Cooperative Employers who are present signatories to this Agreement or Condominium Cooperative Employers who may hereafter become signatories to this Agreement as provided for in Paragraph 3.1 above, shall as a condition of continued coverage by this Agreement be members in good standing of the Condominium Cooperative Employers Council of San Francisco, provided that no employer after becoming a party to this Agreement shall be relieved from the obligation of this Agreement for failure to maintain membership in good standing in the Condominium Cooperative Employers Council of San Francisco.

## Section 4.   HIRING

### 4.1    Filling of Vacancies and New Positions

In the filling of vacancies and new positions and in the employment of extra help, the Employer agrees to give preference of employment to active on-call employees.

In hiring, the Employer may select from applicants sent by the Union and from other sources.

The Employer shall furnish the Union within forty-eight (48) hours after the employment of any employee, his/her name and date of employment.

5

### 4.2   Probation Period for New Employees

The employees hired after the ratification of this Agreement shall be on probation for the first ninety (90) calendar days of employment. New employees terminated by the Employer during the ninety (90) day probationary period shall not be subject to the grievance procedure contained in Section 17 herein. Wages and other working conditions in the contract shall apply to employees during the probationary period. The Employer may extend the probation period for no more than one (1) additional period of thirty (30) days, with notice and explanation to the Union and to the affected employee, with the exception of employees who had at least one (1) year of service with another Employer signatory to this Agreement prior to being hired.

### 4.3   Employer Sole Judge of Qualifications

The Employer shall be the sole judge of the qualifications, competency and fitness in the hiring of all new Employees.

## Section 5.   SENIORITY

### A.   SENIORITY DEFINED

#### 5.1   Definition

Seniority shall be defined as the length of the most recent period of continuous service with the building or complex.  Seniority shall be expressed in terms of years, months and days.  Seniority shall accrue for regular employees within a given classification of work.  If two or more employees are employed within the same classification on the same day, seniority between such employees shall be based on merit and ability according to their employment record.

### B.   AN EMPLOYEE SHALL CONTINUE TO ACCUMULATE SENIORITY DURING:

#### 5.2   Periods of Absence for Worker's Compensation

Periods of absence of not more than six (6) consecutive months due to bona fide illness, injury or due to Workers' Compensation.

#### 5.3   Reinstatement after Termination

Any period in which an employee has been terminated and is subsequently reinstated, unless modified pursuant to the terms of the Grievance Procedure.

#### 5.4   Other Authorized Reasons

6

Leaves of absence of not more than six (6) months for other reasons authorized by the Employer.

C.    LAYOFF AND RECALL

### 5.5    Layoffs

In case it shall become necessary for an Employer to lay off one or more employees, seniority shall apply, merit and ability being equal, within the classifications in the same building or complex.  When the work force is increased within the classification, employees on layoff shall be recalled in order of their job classification.  Thus the last employee laid off within the classification shall be the first employee rehired.  The Employer shall have the burden of showing why a more senior employee should be laid off before a less senior employee based on merit and/or ability.

D.    NOTICE OF LAYOFF

### 5.6    Notice of Requirement and Pay in the Event of Layoff

When an employee is laid off, the Employer shall give the employee seven (7) days notice in writing or one (1) week's pay in lieu thereof.

E.    RECALL

### 5.7    Notice Requirement for Recall

Regular employees who have been laid off for more than thirty (30) consecutive days shall be notified by the employer at least forty-eight (48) hours before they are scheduled to return to work, unless such notice is waived by the employee.

F.    CONSIDERATIONS FOR FILLING VACANT POSITIONS

### 5.8    Considerations

The Employer will set the qualifications for a particular job based on business needs. Such qualifications will be set forth in writing.  The Employer shall post the vacant position(s) in an on-site location accessible to all employees eligible to bid on the position(s), with a copy faxed or mailed to the Union at the beginning of the posting period, for a minimum of five (5) working days before permanently filling the position(s). Current employees may bid for vacant positions and scheduled shifts (which include days off). The Employer will make the decision based upon seniority along with qualifications, merit, and ability, in accordance with their employment record (barring a bad employment record, the senior employee gets the job). There shall be no bumping.

## Section 6.   VACATIONS

**6.1   Vacation – Years One (1) through Four (4)**

All employees shall be entitled to at least two (2) weeks vacation with pay once each year, provided that such employee shall have been in the service of the Employer continuously for not less than one (1) year at the time vacation is granted.

**6.2   Vacation – Years Five (5) through Nine (9)**

All employees who have been in the service of the Employer continuously for five (5) years or more shall be entitled to three (3) weeks vacation with pay once each year.

**6.3   Vacation – Years Ten (10) through Twenty-Four (24)**

All employees who have been in the service of the Employer continuously for ten (10) years or more shall be entitled to four (4) weeks vacation with pay once each year.

**6.4   Vacation – Years Twenty-Five or More (25+)**

All employees who have been in the service of the Employer continuously for twenty-five (25) years or more shall be entitled to five (5) weeks vacation with pay once each year.

**6.5   Pro-Rated Vacation in the Event of Termination**

Any employee whose employment terminates after six (6) months or more of service shall be given prorated vacation pay.

**6.6   Allowable Vacation Periods**

Vacation choices shall be determined by seniority. Any new hire will be subject to the provisions of this clause once he/she reaches the first year anniversary date of employment. Vacation selection for such new hires shall be made in accordance with Section 5.1 of the Seniority provision.

All employees shall furnish vacation preferences to the Building Manager or his/her immediate supervisor between December 1 through December 15. Any employee who misses the December 15th deadline and does not furnish his/her vacation preference shall select the vacation preference from the remaining available weeks in order of seniority. Employees may select vacations between January 1st through October 31st. It is understood between the parties that the employer reserves the right to determine how many employees will be permitted to take vacations during any one week.

8

6.7    **Absence from Service**

Absence from service of not more than sixty (60) calendar days because of illness, temporary layoff or leave of absence shall not interrupt the continuity of employment for the purpose of this section. In the event of such absence of more than sixty (60) calendar days, the pay for the vacation period shall be prorated on the basis of actual weeks worked.

6.8    **Change in Ownership**

In the event of a change of ownership, the former owner shall be obligated to provide his pro rata of vacation or vacation pay and the new owner shall likewise provide his pro rata vacation or vacation pay for the current year but shall not be required to assume any further obligation arising prior to said change of ownership. The service record of employees for the purpose of vacations shall not be broken by reason of change of ownership of a building covered by this Agreement.

6.9    **Severance of Employment Relations**

Severance of employment relations shall not disentitle an employee to vacation with pay when he is entitled thereto under this Agreement.

6.10   **Vacation in Excess of Contract**

Any employee receiving vacation with pay in excess of those contained in this Agreement shall not have such vacation privilege reduced.

6.11   **When Vacation Pay is to be Paid / Shift Differential**

All employees shall receive their full vacation pay prior to going on vacation, at the rate in effect at the time vacation is taken, including the shift differential, if applicable.

6.12   **Vacation Without Interruption / Call Back Pay**

All employees shall receive their full vacation period without interruption. Any employee called back to work prior to the completion of his or her vacation shall receive time and one-half his or her regular rate of pay in addition to his or her vacation pay for the time he or she is required to work during his or her vacation.

6.13   **Holidays During Vacation**

In the event that any of the holidays named herein occur during an employee's vacation period, such employee shall be entitled to take an additional day's vacation for such holiday with pay or an additional day's pay in lieu of, at the option of the Employer.

### 6.14   Pay in Lieu of Vacation

It is agreed between the parties that all employees shall have the right to take pay in lieu of vacation; however, the Employer may require each employee to take a minimum of fifty percent (50%) or two (2) weeks, whichever is lesser, of his/her annual vacation accrual as vacation time off each year. The Employer shall have the option to pay only one employee under this provision per building per pay period, with preference by seniority.

If an employee takes vacation time which has been paid in advance pursuant to this provision, such vacation time taken shall count as paid hours for the purpose of eligibility for all benefits under this Agreement, and the Employer shall make such benefit payments at the time when the vacation time is taken. (For example, the employee receives a vacation cash-out of two weeks in January, and later takes one of these two weeks as vacation time in July; the Employer would pay applicable benefits for the one week taken in July as if those hours had been worked in July).

## Section 7.   HOLIDAYS

### 7.1   Holidays Observed

The following days shall be observed as paid holidays:  New Year's Day, Martin Luther King's Birthday (3rd Monday in January), Memorial Day, Independence Day, Labor Day, Veteran's Day, Thanksgiving Day, the day after Thanksgiving Day, Christmas Day.  In addition, each employee shall receive two (2) floating holidays each calendar year which are to be scheduled no less than two (2) weeks in advance and by mutual written agreement between the Employer and employee.  Where appropriate, seniority will apply.  Employees must receive their floating holidays each calendar year.  If a holiday falls on Sunday, it shall be observed on the following Monday.  It is understood that on holidays, the Employer shall be permitted to designate the employees to be off.  Employees shall be rotated to provide all employees an equal opportunity to enjoy holidays. An employee whose regular day off falls on a holiday shall be granted an additional day off during the ensuing fourteen (14) days or he or she shall receive pay in lieu thereof at the employee's regular rate of pay.  In the event an employee's shift falls within two calendar days, the holiday observance shall be on the shift in which the majority of hours are scheduled.

### 7.2   Federal Observance Takes Precedence

When any of the holidays are observed by the State and Federal Governments on different days, the Federal declaration shall take precedence and such day shall be observed as the holiday under the terms of this Agreement, except December 25th, which will always be observed on the day it occurs.

7.3   **Eligibility**

In order to be eligible for holiday pay, an employee must work or be off according to his or her regular schedule on the last regular work day immediately prior to a holiday and on the first regular work day immediately following that holiday, unless the Employee can show a justifiable excuse for his absence to his or her employer. An employee who fails to report as scheduled for work on a holiday shall forfeit his or her holiday pay.

7.4   **Pay Rate for Holiday's When it Falls on a 6th Consecutive Day**

Employees required to work on the sixth (6th) consecutive day in any one week and when that sixth (6th) day falls on a holiday the employee will be paid two-and-one-half (2 1/2) times his or her regular salary.

## Section 8.   SICK LEAVE

8.1   **Rate at Which Leave is Earned**

Each employee shall start earning sick leave on the first day of employment, at the rate of 6.67 hours per month up to a maximum of ten (10) days per year. Only employees with regular work schedules (Full Time or Part Time) of at least sixteen (16) hours per week will earn paid sick leave.

8.2   **When Sick Leave is Payable**

Sick leave will be payable to the employee on the first day an employee is sick or hospitalized. Such sick leave with pay shall be applicable only in cases of bona fide illness or accident. Sick leave will also be payable to the employee for doctor or dental appointments. Such sick leave with pay for said appointments shall be applicable only in cases where the employee has provided the Employer with at least seventy-two (72) hours advance notice of the appointment, where the employee has obtained the employer with at least seventy-two (72) hours advance notice of the appointment, where the employee has obtained the employer's prior approval of the absence and where the employer requests written verification by a physician that the employee was at the appointment, that such is provided. An employee may use up to one-half of a year's accrual of sick leave to care for a sick or injured family member which shall be defined as father, mother, sister, brother, current spouse, child, or registered domestic partner of the employee.

8.3.   **Payable for Regularly Scheduled Workdays**

Sick leave is specifically payable for regularly scheduled workdays only, at that employee's straight-time rate of pay.

11

**8.4**   <u>Sick Pay for Regular Part-Time Employees</u>

Regular part-time employees who work fewer than twenty four (24) hours per week and at least sixteen (16) hours per week shall be eligible for pro-rata sick pay.

**8.5**   <u>Unused Sick Pay</u>

All employees shall accrue sick pay up to a maximum of thirty-five (35) days.

**8.6**   <u>Integration with Disability and Worker's Compensation</u>

In cases where an employee is eligible to receive disability benefit payments either under California Unemployment Insurance Code or comparable voluntary disability insurance plan, the employee shall apply for and received his/her full disability payment. The sum of each disability benefit payment plus sick leave pay shall equal but not exceed the employee's regular rate of pay. In applying this provision, the Employer shall pay its portion of the amount due the employee for each day so that together with the employee's full disability benefit payment shall equal the employee's regular rate of pay.

The same method of integration shall apply in cases of worker's compensation insurance benefits.

**8.7**   <u>Verification</u>

After two (2) or more consecutive days of sick leave, the Employer may require a doctor's certificate. If there is evidence of prior sick leave abuse by an employee, the Employer may require a doctor's certificate from that employee after one (1) day of sick leave.

**8.8**   <u>False Claims</u>

Any employee accepting or claiming benefits under this Section by reason of false statements or documents shall be subject to discipline up to and including termination. Any employee on paid sick leave for a particular shift from one employer and working for another employer on that same shift or any shift within the twenty-four (24) hour period that the shift for which he/she receives the paid sick leave takes place shall be considered in violation of this provision and subject to immediate termination.

**8.9**   <u>Purpose of Sick Leave Benefits</u>

Sick leave benefits are only intended to be a protection against income loss while ill or disabled. There will be no compensation for unused sick leave at the termination of employment.

Section 9.   WELFARE FUND, PENSION TRUST AND RETIREMENT SAVINGS
PLAN

A.   WELFARE FUND

### 9.1   Purpose of the Welfare Fund

For the purpose of establishing and providing hospitalization, medical and
surgical care, dental, vision care, and group life insurance programs, the
Employer shall contribute to the Apartment Employees Welfare Fund the
following sums for each straight-time hour worked by the employees covered by
this Agreement.

### 9.2   Welfare Fund Contribution in Dollars up to:

| | | |
|---|---|---|
| Effective February 1, 2005 | (based on January hours): | $ 3.17 Per Hour |
| Effective February 1, 2006 | (based on January hours): | $ 3.56 Per Hour |
| Effective February 1, 2007 | (based on January hours): | $ 3.99 Per Hour |
| Effective February 1, 2008 | (based on January hours): | $ 4.48 Per Hour |
| Effective February 1, 2009 | (based on January hours): | $ 5.03 Per Hour |

It is the intention of the parties that the benefit plan in effect as of October 1,
2004 shall remain in effect for the duration of this Agreement.  In the event that
the Employer contributions as specified above are not sufficient to maintain the
current level of benefits, the parties to this Agreement (the Union, representative
of the employees and the Employer) shall meet to discuss potential changes in
the Health & Welfare provisions under this Agreement.  It is understood between
the parties that these discussions shall not result in the Employer contributing
any more than the maximums specified above.

### 9.3   Payment

Before the tenth (10th) day of each month, the Employer shall make irrevocably
the required payments for the same calendar month, and such payments shall be
made on behalf of each employee who has worked eighty-one (81) or more
straight-time hours for said Employer during the previous calendar month, so as
to provide coverage for benefits in the same calendar month (for Kaiser) or in the
following calendar month (for Dental).

An employee who has worked a total of eighty one (81) or more straight-time
hours in the preceding calendar month for two or more employers under this
Agreement, but fewer than eighty one (81) hours per month for any individual
employer, shall have eligibility under this agreement upon presenting evidence of
such hours worked to all affected employers, and each affected employer shall
make the contribution by the tenth (10th) day of the calendar month as specified
above for each hour worked during the preceding calendar month by the
employee, so as to provide coverage for benefits in the same calendar month (for

13

Kaiser) or in the following calendar month (for Dental). For the purpose of this paragraph only, "Employers under this Agreement" shall include all residential Employers which participate in the Apartment Employers Trust Fund and which have agreed to the provisions embodied in this paragraph.

### 9.4    Administration

The Welfare fund shall be administered under and by virtue of that certain Agreement and Declaration of Trust between Condominium Apartment Employers Council of San Francisco and Service Employees' Union Local 1877. The Union and Employer hereby accept the terms of said Agreement and Declaration of Trust and agree to be bound by all of the provisions thereof as amended, and hereby acknowledge prior receipt of a copy thereof.  In the event the Trustees designate a different plan than the current one and the contribution required to fund such plan is less than the amount indicated in Section 9.2 above, the Employer will only be obligated to make the contribution which will fund the new benefit.

## B.    PENSION TRUST

### 9.5    Purpose of the Pension and Trust Fund

For the purpose of establishing and maintaining a pension plan, the Employer shall contribute to the Apartment Employees Pension Trust the following  sums for each straight-time hour worked by employees covered by this Agreement:

### 9.6    Pension and Trust Fund Contribution in Dollars

Effective January 1, 2005:     $ 1.07 per hour
Effective January 1, 2007:     $ 1.14 per hour
Effective January 1, 2009:     $ 1.25 per hour

### 9.7    Payment

Before the tenth (10th) day of each month the employer shall make irrevocably the required payments for the preceding calendar month, and such payments shall be made on behalf of each employee for all straight-time hours worked for said employer during the preceding calendar month.  The Pension Plan shall be administered under and by virtue of that certain Agreement and Declaration of Trust between the Apartment Employers Council of San Francisco and Service Employees' Union Local 1877.  The Employer hereby accepts the terms of said Agreement and Declaration of Trust and agrees to be bound by all of the provisions thereof as amended, a copy of which can be obtained from the Trust.

C.   REGULATIONS APPLICABLE TO THE WELFARE FUND AND PENSION TRUST

### 9.8   Hours Considered for Computing Contributions

Paid vacations, holidays, and sick leave are considered as straight time hours worked in computing contributions.

The following types of payments to employees shall not be considered as straight-time worked under this Agreement, and the Employer shall not be obligated to make welfare or pension contributions based on these payments:

a)  Christmas funds
b)  Christmas or other bonuses
c)  Vacation cash payments pursuant to Section 6.14 except when employees later take vacation time off corresponding to such vacation cash payments

### 9.9   Contributions During Sick Leave

When an employee is absent from work because of a bona fide illness or injury for which he or she has been awarded Workers' Compensation Insurance benefits, contributions shall be made on his or her behalf by the employer during such absence for a period not to exceed three (3) months.  No employer shall be required to make any contributions in excess of three months during such an absence.

### 9.10   Change of Ownership

The service record of employees for the purpose of eligibility for welfare benefits and the requirements that an employer make contributions on their behalf as provided, shall not be broken by reason of change of ownership of a firm, corporation or building covered by this Agreement or a subsequent agreement.

### 9.11   401(k)-type Retirement Savings Plan

The Employer agrees to facilitate employee contributions to a 401(k)-type retirement plan if and when such plan has been established by the Union.

## Section 10.  PART-TIME, RELIEF AND CASUAL EMPLOYEES

### 10.1   Regular Part-Time Employee Defined

An employee who is scheduled to work 32 hours or less each week.  Such employee shall earn benefits for holiday and vacation on a pro-rata basis as defined in this agreement.

15

### 10.2   Relief Employee Defined

An employee who is regularly scheduled either full time or part time for a designated period.  He/she shall accrue holiday, sick leave and vacation when working.

### 10.3   Casual Employee Defined

An employee who is one not regularly scheduled to work.  Such employees are not eligible for holidays or vacation pay.

### 10.4   Holiday Pay

Part-time employees, relief and casual employees shall receive the applicable premium rate of pay for hours worked on any holiday as defined in this Agreement.

### 10.5   Additional Available Hours

A regular part-time employee shall be offered additional available hours in his or her classification before such is offered to a casual employee if the part-time employee has previously notified the employer in writing of the hours he is available for additional work.

### 10.6   Emergency Relief

If a workshift is available, the employer will call the Union Dispatcher for casual or relief employees and/or call workers from the Local 1877 list (available to employers from the Union) before going to outside sources for personnel.

## Section 11.   DEFINITIONS OF CLASSIFICATIONS

### 11.1   "Premises"

"Premises" shall include:  Condominiums and cooperative apartments operated by the employer where such spaces exist and all floors, walls, ceilings, woodwork, trim, halls, lobbies, stairways, basements, storage rooms, porches, approaches, yards, lawns and the abutting sidewalks, alleyways and parkways, roofs, lightwells, elevators, and fire escapes.

### 11.2   "Appurtenances"

Appurtenances shall include:  apparatus and equipment, fixtures, furniture, furnishings, carpet, drapes, refrigerators and stoves.

16

### 11.3   "Clean"

"Clean" shall include:  sweep, scrub, mop, wash, brush, vacuum, dust, and polish.

### 11.4   "Services Performed by Contractors"

No regularly scheduled bargaining unit employee will suffer any reduction of work hours as a result of services performed by contractors.

### 11.5   "Handyperson"

An employee who is regularly engaged during half of his time or more in maintaining and making general repairs to the plumbing fixtures, furniture, woodwork, electrical systems and appliances, heating systems and appliances, elevators, ventilation systems, and window and building structures of premises where he is employed shall be classified as a Handyperson.  The duties of a Handyperson shall consist of minor woodwork, painting, plumbing and electrical repairs and installations and other similar duties, together with other assignments at the employer's discretion.  The employer shall furnish and bear the cost of upkeep of all tools and equipment used by the Handyperson.  No handyperson shall be required to furnish his own tools as a condition of employment.  The cost to replace tools lost by an employee shall be borne by the employee so long as the employer provides the employee with a secured locker or storage which only he/she has access to.  It is understood that a handyperson will not be required to perform functions in conflict with the recognized field of work of any other union, and that the employment of a handyperson shall not preclude the employer from engaging the services of contractors to perform any of the above work where the skill of the handyperson is lacking or time is of the essence.

### 11.6   "Janitor"

The duties of a janitor shall be to clean the premises, hand curtains, drapes and pictures, move furniture and baggage and remove garbage, and in addition thereto, to make such repairs and to give such care to apparatus and equipment as may be necessary for its continuous operation and function, together with other assignments at the employer's discretion.  It is understood that a janitor will not be required to perform functions in conflict with the recognized field of work of any other union, except in cases of emergency or where the interests of the owner or agent may suffer from failure to have the work done at once, and that the employment of a janitor shall not preclude the employer from engaging the services of contractors to perform any of the above work where the skill of the janitor is lacking and time is of the essence.

### 11.7   "Resident Handyperson or Janitor"

17

Resident handypersons or janitors, in addition to the prescribed duties of handyperson or janitor, as the case may be, together with other assignments at the employer's discretion, may be required to perform other minor duties during their regular work week and prior to the commencement of their regular work day, the performance of which shall not require more than thirty (30) minutes time per day, and may be required to perform emergency services calling for immediate attention without additional compensation.

### 11.8  "Head Door Attendant"

An employee who regularly supervises two (2) or more door attendants and is responsible for scheduling of work as well as performing all of the duties of the "Door Attendant".

### 11.9  " Door Attendant "

Duties of Door Attendants shall include assisting residents and visitors entering and leaving the building on foot or by cab or other vehicle. Maintenance of building security including limiting access to authorized personnel. Maintenance of logs and answering telephones, together with other assignments consistent with the job classification at the employer's discretion. The parties to this Agreement recognize that the duties of Door Attendants can encompass coordination of various aspects of security and service to residents/ owners within the building.

### 11.10  "Watchperson"

An employee the major portion of whose shift is performed after twelve (12:00) midnight and before eight (8:00) a.m. and whose duties include the guarding of the entrance(s) of the building(s) in which he is employed and the performance of the general duties normally required of a watchperson and may include in addition any of the duties described above, together with other assignments at the employer's discretion.

### 11.11  "Receiving Clerk"

The duties of a receiving clerk shall be the receiving and delivering of packages, parcels and supplies for the employer and the tenants of the building as normally required of a receiving clerk.  He or she shall not be required to perform any handyman or janitorial duties except as may be required in cleaning the receiving room; he/she shall be responsible for any packages, parcels or property received by him or her except those which have been stored or delivered as directed by the employer.

### 11.12  Performance of Janitorial Duties by Watchpersons and Door Attendants

Any employee so classified shall not perform any janitorial duties except to a limited extent where reasonably necessary; with the understanding that past practices may be maintained.

## 11.13  Emergencies

In the event of an emergency (defined as a crisis, sudden or unexpected happening or situation), any employee can be asked to perform the work of another classification and must reasonably cooperate in doing so.  He/she shall receive the pay of the higher classification.



## Section 12.  RATES OF PAY

### A.    RATES OF PAY SHALL BE:

*Note: The rates of pay listed below represent minimums.*

Effective October 1, 2004 on the first payroll period commencing thereafter, rates of pay shall be as follows:  *(Forty-five cents ($.45) increase)*

|  | Job Classifications | Hourly Rate | 1.5 X O.T. Wage | 2 X O.T. Wage | 85% Hourly Rate |
|---|---|---|---|---|---|
| 12.1 | Handyperson | $16.97 | $25.46 | $33.94 | $14.42 |
| 12.2 | Resident Handyperson | 16.97 | 25.46 | 33.94 | 14.42 |
| 12.3 | Janitor Working 8 hours | 16.74 | 25.11 | 33.48 | 14.23 |
| 12.4 | Janitor Working 4 hours | 17.19 | 25.79 | 34.38 | 14.61 |
| 12.5 | Resident Janitor – 8 hours | 16.74 | 25.11 | 33.48 | 14.23 |
| 12.6 | Resident Janitor – 4 hours | 17.19 | 25.79 | 34.38 | 14.61 |
| 12.7 | Watchperson | 16.655 | 24.98 | 33.31 | 14.16 |
| 12.8 | Receiving Clerk | 16.655 | 24.98 | 33.31 | 14.16 |
| 12.9 | Head Door Attendant | 16.84 | 25.26 | 33.68 | 14.31 |
| 12.10 | Door Attendant | 16.585 | 24.88 | 33.17 | 14.10 |

Any employee who receives wages higher than the wages listed in this agreement shall receive the annual wage increase in addition to their present wage.

Effective October 1, 2005 on the first payroll period commencing thereafter, rates of pay shall be as follows:  *(Forty-five cents ($.45) increase)*

|  | Job Classifications | Hourly Rate | 1.5 X O.T. Wage | 2 X O.T. Wage | 85% Hourly Rate |
|---|---|---|---|---|---|
| 12.1 | Handyperson | $17.42 | $26.13 | $34.84 | $14.81 |
| 12.2 | Resident Handyperson | 17.42 | 26.13 | 34.84 | 14.81 |
| 12.3 | Janitor Working 8 hours | 17.19 | 25.79 | 34.38 | 14.61 |
| 12.4 | Janitor Working 4 hours | 17.64 | 26.46 | 35.28 | 14.99 |
| 12.5 | Resident Janitor – 8 hours | 17.19 | 25.79 | 34.38 | 14.61 |
| 12.6 | Resident Janitor – 4 hours | 17.64 | 26.46 | 35.28 | 14.99 |
| 12.7 | Watchperson | 17.105 | 25.66 | 34.21 | 14.54 |
| 12.8 | Receiving Clerk | 17.105 | 25.66 | 34.21 | 14.54 |
| 12.9 | Head Door Attendant | 17.29 | 25.94 | 34.58 | 14.70 |
| 12.10 | Door Attendant | 17.035 | 25.55 | 34.07 | 14.48 |

Effective October 1, 2006 on the first payroll period commencing thereafter, rates of pay shall be as follows: *(Forty-five cents ($ .45) increase)*

| | Job Classifications | Hourly Rate | 1.5 X O.T. Wage | 2 X O.T. Wage | 85% Hourly Rate |
|---|---|---|---|---|---|
| 12.1 | Handyperson | $ 17.87 | $ 26.81 | $ 35.74 | $ 15.19 |
| 12.2 | Resident Handyperson | 17.87 | 26.81 | 35.74 | 15.19 |
| 12.3 | Janitor Working 8 hours | 17.64 | 26.46 | 35.34 | 14.99 |
| 12.4 | Janitor Working 4 hours | 18.09 | 27.14 | 36.18 | 15.38 |
| 12.5 | Resident Janitor – 8 hours | 17.64 | 26.46 | 35.34 | 14.99 |
| 12.6 | Resident Janitor – 4 hours | 18.09 | 27.14 | 36.18 | 15.38 |
| 12.7 | Watchperson | 17.555 | 26.33 | 35.11 | 14.92 |
| 12.8 | Receiving Clerk | 17.555 | 26.33 | 35.11 | 14.92 |
| 12.9 | Head Door Attendant | 17.74 | 26.61 | 35.48 | 15.08 |
| 12.10 | Door Attendant | 17.485 | 26.23 | 35.97 | 14.86 |

Effective October 1, 2007 on the first payroll period commencing thereafter, rates of pay shall be as follows: *(Forty-five cents ($ .45) increase)*

| | Job Classifications | Hourly Rate | 1.5 X O.T. Wage | 2 X O.T. Wage | 85% Hourly Rate |
|---|---|---|---|---|---|
| 12.1 | Handyperson | $ 18.32 | $ 27.48 | $ 36.64 | $ 15.57 |
| 12.2 | Resident Handyperson | 18.32 | 27.48 | 36.64 | 15.57 |
| 12.3 | Janitor Working 8 hours | 18.09 | 27.14 | 36.18 | 15.38 |
| 12.4 | Janitor Working 4 hours | 18.54 | 27.81 | 37.08 | 15.76 |
| 12.5 | Resident Janitor – 8 hours | 18.09 | 27.14 | 36.18 | 15.38 |
| 12.6 | Resident Janitor – 4 hours | 18.54 | 27.81 | 37.08 | 15.76 |
| 12.7 | Watchperson | 18.005 | 27.01 | 36.01 | 15.30 |
| 12.8 | Receiving Clerk | 18.005 | 27.01 | 36.01 | 15.30 |
| 12.9 | Head Door Attendant | 18.19 | 27.29 | 36.38 | 15.46 |
| 12.10 | Door Attendant | 17.935 | 26.90 | 35.87 | 15.24 |

Effective October 1, 2008 on the first payroll period commencing thereafter, rates of pay shall be as follows: *(Forty-five cents ($.45) increase)*

|  | Job Classifications | Hourly Rate | 1.5 X O.T. Wage | 2 X O.T. Wage | 85% Hourly Rate |
|---|---|---|---|---|---|
| 12.1 | Handyperson | $ 18.77 | $ 28.16 | $ 37.54 | $ 15.95 |
| 12.2 | Resident Handyperson | 18.77 | 28.16 | 37.54 | 15.95 |
| 12.3 | Janitor Working 8 hours | 18.54 | 27.81 | 37.08 | 15.76 |
| 12.4 | Janitor Working 4 hours | 18.99 | 28.49 | 37.98 | 16.14 |
| 12.5 | Resident Janitor – 8 hours | 18.54 | 27.81 | 37.08 | 15.76 |
| 12.6 | Resident Janitor – 4 hours | 18.99 | 28.49 | 37.98 | 16.14 |
| 12.7 | Watchperson | 18.455 | 27.68 | 36.91 | 15.69 |
| 12.8 | Receiving Clerk | 18.455 | 27.68 | 36.91 | 15.69 |
| 12.9 | Head Door Attendant | 18.64 | 27.96 | 37.28 | 15.84 |
| 12.10 | Door Attendant | 18.385 | 27.58 | 36.77 | 15.63 |

## 12.12 Janitor Short Shift Premium

The above wage rate of four (4) hour janitors is inclusive of a forty-five cents ($.45) per hour short shift premium.

## 12.13 6:00 PM to 6:00 AM Pay Premium

Effective October 1, 2005 [1]     $ .55 Per Hour
Effective October 1, 2006 [1]     $ .60 Per Hour
Effective October 1, 2007 [1]     $ .65 Per Hour
Effective October 1, 2009 [1]     $ .70 Per Hour

[1]  Effective on the first payroll period commencing after October 1, 2005 and thereafter.

## B.    BEGINNERS' RATES OF PAY

### 12.14 Beginners' Rates of Pay

During the first six (6) months of employment, employees shall be paid eighty-five percent (85%) of the applicable wages set forth in this section. Thereafter an employee shall be paid per the schedule above.

### 12.15 Beginners' Rates of Pay Exception

If a new employee has one or more years of experience with Local 1877 in a similar classification he/she will be exempt from this provision and will start at the 100% rate of pay.

C.    PAYDAYS

### 12.16  Regular Pay Periods

The wages of the regular employees shall be paid semi-monthly; provided that, when such regular payday falls on a Sunday or a holiday, employees shall be paid on the immediately previous day to such Sunday or holiday. Employers currently paying wages on a weekly or bi-weekly basis shall maintain that practice.  The employer will make reasonable efforts to have paychecks available by the end of an employee's shift on payday.

### 12.17  Pay Upon Termination or Layoff

If an employee is laid off or his/her services are terminated for any reason, he/she shall be paid on or before the termination of his/her last shift; any employee not so paid shall be compensated for one day's pay for each day he/she reports for his/her pay.

### 12.18  Pay by Mail

Any employee whose services are terminated may, if he/she so elects, have his/her wages sent to him/her by mail, addressed as he/she may direct.

### 12.19  Recording on Time

Employees are to promptly and accurately record their time (i.e. starting time, meal period, quitting time, or other time absent from work) and failure to do so could result in disciplinary action.

## Section 13.   WORK DAY, WORK WEEK, HOURS AND OVERTIME

A.    WORK DAY

### 13.1  Eight (8) Hour Work Day

Eight (8) hours within nine (9) consecutive hours shall constitute a day's work.

### 13.2  Four (4) Hour Work Day – Short Shift

Four (4) consecutive hours in the employ of one employer shall constitute a day's work for employees working on a short shift.

### 13.3   Day's Work Defined

A day's work shall be defined as the day in which the majority of the hours are worked.

### 13.4   Resident Handyperson and Janitor to work No Later Than 5:00 P.M.

Resident handyperson's and resident janitor's work day shall be completed not later than 5:00 p.m.

### B.   WORK WEEK

### 13.5   Work Week Defined

Forty (40) hours worked in a period of five (5) consecutive days within a calendar week shall constitute a week's work, except as provided in Section 13(a), (b) and (c).

### C.   SHORT SHIFT

### 13.6   Short Shift Defined

Four (4) consecutive hours shall constitute a short shift.  Except by mutual agreement between the employee and employer, janitors employed in the morning on a short shift shall complete such short shift by 12:00 noon; if employed in the afternoon a short shift shall be between the hours of 1:00 p.m. and 5:00 p.m.

### D.   SPLIT SHIFT

### 13.7   Split Shift

There shall be no split shifts.

### E.   NIGHT SHIFT

### 13.8   Night Shift Defined

A night shift shall be deemed to be the one in which the major portion of hours is worked after 7:00 p.m. and before 7:00 a.m.  Eight (8) consecutive hours shall constitute a night shift.  One-half (1/2) hour meal period on the premises within eight (8) hours shall be allowed any employee working a night shift.  No deductions shall be made for such

24

meal period allowance.  No shift shall have a start time after midnight and before 6:00 a.m. except in case of a bona fide emergency.

## F.   WORK SCHEDULE

### 13.9   Work Schedule Defined

A weekly schedule shall be posted containing each regular employee's starting and quitting time, work days, days off, which shall not be changed by the employer without thirty-six (36) hours previous notice to the employees affected, except when made necessary by an emergency.

## G.   OVERTIME

### 13.10  Overtime Defined

For any work in excess of a day's work, or for any work in excess of a short shift, or for any work in excess of a week's work, or for any work performed on an employee's day off, or on holidays, overtime at the rate of time-and-one-half (1.5x) shall be paid. Double time shall be paid for all hours worked in excess of twelve (12) consecutive hours. Double time shall be paid for all hours worked on any seventh consecutive day. Any employee working on a holiday listed in Section 9 shall be paid overtime at the rate of time-and-one-half, in addition to a day's pay for the holiday. Overtime shall be computed based on the employee's rate of pay.

### 13.11  Overtime Four (4) Hour Minimum Pay

If an employee is required to work overtime consecutive with his or her day's work, such employee shall be paid for not less than one (1) hour at the overtime rate or the time actually worked at the overtime rate, whichever is greater.  Should an employee be called back to work by the employer at the completion of his or her day's work, his or her week's work, or his/her regular days off or on holidays, he/she shall be paid for not less than four (4) hours at the overtime rate or the time actually worked at the overtime rate, whichever is the greater.  Overtime shall be offered in accordance with seniority if the employee is qualified to do the work.

### 13.12  Overtime Eight (8) Hour Pay Requirement

Notwithstanding the provisions of Section 13 G. and Section 13 H. of this Agreement, should an employee be required to work on Thanksgiving Day, Christmas Day or New Year's Day, such employee shall be paid for not less than eight (8) hours at the overtime rate or the time actually worked at the overtime rate, whichever is greater.

25

H.   MINIMUM CALL

### 13.13  Required Notice

Notice that the services of an employee will not be required on any given day shall be given to him/her not later than the termination of the employee shift on the preceding day.  If such notice be not so given and such employee shall report for work, he/she shall be entitled to and shall be paid a sum of money equal to four (4) hours wages.

### 13.14  Pay Requirement when Employer Requests an Employee Report for Work

When an employer or its representative requests a person to report for work and said person does so report at the time specified but is not put to work, the employer shall pay said person one (1) full day's wages.  This rule shall not apply when the employer wishes to fill a vacancy by interviewing applicants for the job.

I.   COMBINATION JOB

### 13.15  Combination Job Defined

When an employee occupies a position which combines two or more classifications of work, the employee shall be paid at the rate for the higher classification; provided that such classification occupies two or more hours of said employee's work day.

## Section 14.  LUNCH AND REST PERIODS

A.   LUNCH PERIODS

### 14.1  Lunch Periods

All employees (except as provided under Section 13 E. Night Shift) shall be relieved from their duties for their lunch period and provided further that such lunch periods shall not be set by the employer sooner than three and one-half (3 1/2) hours following the commencement of their shift, nor later than four and one-half (4 1/2) hours following the commencement of their shift.

B.   REST PERIODS

### 14.2  Rest Periods

26

On or about the middle of each half shift, all employees shall receive one fifteen (15) minute break. No deduction shall be made for such rest period. Such break shall not interrupt ongoing services.

## Section 15.   LEAVES OF ABSENCE

### A.   UNPAID LEAVE

#### 15.1   Leaves of Absence

Leaves of absence may be granted by the employer for reasons of bona fide illness or other reasons mutually agreed upon by the employer and the employee. Such leaves of absence shall be without pay except as hereinafter provided. Such leaves of absence shall not affect the employee's rights under this Agreement. The provisions in this section shall be consistent with the Americans With Disabilities Act.

### B.   SENIORITY VACATION LEAVES OF ABSENCE

#### 15.2   Seniority Leaves

Employees with at least two (2) years of continuous service shall, not more often than once every three (3) years, be entitled to take up to two (2) additional weeks of leave without pay immediately following their regular vacation period, provided they request such unpaid leave at least thirty (30) days prior to the start of their regular vacation period. For the purposes of selecting dates, such leaves will be determined by seniority consistent with the granting of vacation requests.

### C.   JURY DUTY

#### 15.3   Pay Requirements

An employee who is summoned and who is physically required to report in person for jury service shall be paid the difference between his regular day's pay and any amount of jury pay received for up to twenty (20) business days of such per year.

#### 15.4   Schedule Requirements

Employees who are scheduled to work a day or evening shift on the day of jury duty and employees scheduled to work on the night shift (11:00 p.m. to 7:00 a.m.) immediately prior to jury duty shall not be required to work their shift and will receive pay under the conditions indicated in C. 15.3 above.

### 15.5   Hardship

Since the parties recognize that there are often hardships for the employee, his or her family and the employer when jury duty is served, it is agreed the employee will promptly advise the Court of such when these situations occur.

## D.   BEREAVEMENT LEAVE

### 15.6   Death in the Immediate Family

In the event of a death in the immediate family of an employee, he or she shall, upon request, be granted three (3) regularly scheduled working days off with pay to make arrangements for the funeral and attend same.  Up to two (2) additional days off with pay will be granted if the funeral occurs outside a two hundred (200) mile radius from the employee's residence. For the purposes of this provision, the immediate family shall be restricted to the father, mother, sister, brother, current spouse, child, mother-in-law, father-in-law, registered domestic partner of the employee and grandparents.

### 15.7   Leave of Absence for Union Business

A Leave of Absence with accumulative seniority and no pay shall be granted in the event an employee is elected or requested by the Union to take time off from work for official Union business. The leave shall be for a maximum of thirty (30) calendar days but the Union may request an extension. No more than one (1) person may be requested from any one building at any one time and the Employer reserves the right to refuse a request for legitimate business necessities. The Union agrees to notify the Employer seven (7) business days in advance as to the time needed and nature of the time off requested. At buildings with fewer than five (5) employees, the Union shall only request such leaves if it can provide on-call personnel acceptable to management for the duration of such leaves.

## Section 16.   GENERAL PROVISIONS

### 16.1   Uniforms and Laundry

Where the employer requires the employees to wear special dress or uniforms, the employer shall furnish such special dress or uniforms and provide for their reasonable upkeep and replacement.  For full time doorpersons, said uniforms shall include but not be limited to two jackets, two pants, two ties and five shirts.  For full time and part time janitors, receiving clerks and handypersons said uniforms shall be one pair of

28

pants and one shirt for each normal regular shift scheduled per week. Employees must wear appropriate footwear.

### 16.2  Dressing Rooms or Lockers

Dressing rooms or lockers shall be provided by the employer where employees may store their belongings during working hours and change to and from street attire.

### 16.3  Break Room

To the extent practical and where there are more than five (5) employees, there shall be a comfortable, sanitary lounge/break area/lunchroom that includes a microwave oven and refrigerator.

### 16.4  Quarters

The Resident Handyperson or Resident Janitor shall be furnished quarters without charge.  Such quarters shall be maintained in proper habitable condition at the expense of the employer.  The employee's quarters shall not be entered by anyone without his or her permission or with twenty-four (24) hours notice or in case of fire or emergency.

### 16.5  Work Rules

The Employer has the right to establish reasonable safety and work rules which shall be conspicuously posted and which the employees shall observe.

### 16.6  Breakage

The cost of all breakage not due to gross negligence of the employee shall be borne by the employer.

### 16.7  Acts of God

Guarantees shall not apply if the employer is unable to operate due to an act of God, utility failure, government restriction, fire, flood, riot, civil commotion, the failure or refusal of the group of employees to report for or perform their work, or any cause beyond the control of the employer.

### 16.8  Employee Handling of Funds

No employee shall handle any funds of the employer unless expressly authorized in writing by the employer.  Any employee so entrusted within the employer's funds shall not be held responsible for loss through

29

robbery, fire or other circumstances beyond the employer's control. Employees handling funds shall conform to the written instructions issued by the employer.

### 16.9   Fidelity Bonds

The employer agrees to pay all fidelity bond premiums when bonds are required by the employer. All cash deposits or cash bonds in lieu of fidelity bonds now in force will be returned to the employees so affected at once.

## Section 17.   GRIEVANCE, DISCHARGE AND RETIREMENT

### 17.1   Referral to a Board of Adjustment and Arbitration

(1)   A grievance shall be defined as any difference between the Employer and the Union involving the meaning or application of the specific provisions of this Agreement and shall be taken up in the manner set forth in this section. Any such grievance between the employee or Union with the Employer is to be received in writing by the party to whom it is directed (the Respondent) within five (5) business of the date of the discharge on a discharge matter and within fifteen (15) business days of the date of the occurrence on all other matters.

Otherwise the discharge matter and other matters will be considered dropped. Any dropping shall be final and binding and enforceable in a court of law. If these time frames are met but the matter is not resolved: **STEP 1** – the Employer and/or its representative and the Union and/or its representative along with the grieving party (if an employee) will meet and attempt to resolve the matter within five (5) business days of its receipt by the respondent. Otherwise, the discharge matter and other matters will be considered dropped. Any decision or dropping shall be final and binding and enforceable in a court of law.

(2)   If this time frame is met but the matter is not resolved, then the grievance shall proceed to **STEP 2** – The Employer and/or its representative and the Union and/ or its representative and the grieving party (if an employee) will meet in a Board of Adjustment and attempt to resolve the matter within ten (10) business days of the date of the STEP 1 meeting, subject to the availability of the parties. Otherwise the matter will be considered dropped. Any decision or dropping shall be final and binding and enforceable in a court of law. The Board of Adjustment panel members shall be two (2) persons selected by the employer who are not employees or residents of the employer and two (2) persons selected by the Union, only one (1) of whom can be an officer, business representative or employee of the

Union. None of the four (4) panel members is to represent (put on the case(s) of) the grieving party or the respondent in the Board of Adjustment.

(3)    If this time frame is met but the matter is not resolved, then the grievance shall proceed to **STEP 3** – The Employer and/or its representative and the Union and/ or its representative and the grieving party (if an employee) will meet in impartial Arbitration. Otherwise the matter will be considered dropped. The impartial Arbitrator is to issue a written decision. Otherwise the matter will be considered dropped. Any decision or dropping shall be final and binding and enforceable in a court of law. Expenses of the impartial Arbitration will be borne one-half (1/2) by the employer and one-half (1/2) by the Union. Each party shall pay its own representational expenses.

Expedited arbitration shall only be used by mutual consent of the parties. The Union and Employer representatives will request that the Federal Mediation and Conciliation Service furnish the parties a panel of seven (7) arbitrators from the Northern California area.

Upon receipt of the list of panelists, both parties or their representatives shall select an arbitrator within ten (10) calendar days. In the event that the parties cannot agree to an arbitrator, both parties shall alternatively strike names, the determination of the party who strikes first shall be by lot. The sole remaining name shall be appointed the arbitrator. The arbitration hearing shall be conducted using the FMCS rules/guidelines for expedited arbitration.

The arbitrator shall have no authority to modify, add to, or subtract from any of the terms of this Agreement. Any expenses incidental to the conduct of the hearing and the fee of the arbitrator shall be borne equally by the parties.

In the event either party believes the matters raised by a grievance are of such importance as to override the desirability of the expedited and informal arbitration procedures contained in this Section, such party shall advise the other in writing of its desire to proceed to arbitration under the provisions of Section 17 of this Agreement, wherein the parties are not limited to representation by any person of this choice.

Neither the parties of STEP 1, the Board of Adjustment or the impartial Arbitrator shall have the authority to negotiate, alter or change any of the terms and conditions of the collective bargaining agreement.

### 17.2   Precedent Setting

In any and all matters (Problem and Grievance Settlements) none shall be deemed precedent setting without the written approval of the President of the Union and/or a union representative authorized in such matters, and the President of the CCEC.

## B.   DISCHARGE

### 17.3   In the Event of Discharge

If an employee is discharged he/she shall immediately surrender all house keys, equipment and property belonging to the Employer. Employees who are discharged and occupy quarters as provided in this Agreement shall vacate such quarters which may be occupied by him or her within five (5) business days after written notice from the Employer.

### 17.4   Notice Requirement for Terminations

No employee shall be disciplined or discharged without just cause. The reason for any disciplinary action or discharge shall be reduced to writing and given to the employee and/or steward or Union. Any discipline will be imposed within seven (7) calendar days of the time the Employer became aware of the offense or concluded its investigation. Any employee who has a reasonable belief that he/she will be disciplined by their immediate supervisor or other management representative has the right to request the presence of a union representative and/or a steward at such a meeting. In the event neither is available to attend such meeting at a reasonable time and with reasonable notice, the Employer may proceed with the administration of the discipline. An employee who believes he/she has been either unjustly disciplined or discharged may file a grievance in accordance with Section 17 of this Agreement.

## C.   RETIREMENT

### 17.5   Employee Retirement

Employee retirement shall be treated according to law.

## Section 18.   SAVINGS CLAUSE

### 18.1   Savings Clause

If any provisions or sections of this Agreement be rendered or declared invalid by reason of any existing or subsequently enacted legislature, or by any decree of a court of competent jurisdiction, such invalidation of such

part or portion of this Agreement shall not invalidate the remaining portions hereof and they shall remain in full force and effect. The parties agree that upon invalidation, the parties shall meet within two (2) weeks, and negotiate substitute provisions for such parts of provisions rendered or declared invalid.

## Section 19.  LABOR MANAGEMENT COMMITTEE

### 19.1   Establishment of a Labor Management Committee

A Labor Management Committee consisting of an equal number of representatives of the Employer and the Union shall hold meetings as needed to determine problems of mutual concern to both parties not specifically covered by the terms of this Agreement. The purpose of the Committee shall be to promote and perpetuate harmonious relations, to study and recommend ways and means of promoting the economic welfare of the employers and members of the Union. This committee shall not supersede the functions of the Adjustment Board as set forth in this Agreement.

## Section 20.  MANAGEMENT RIGHTS

### 20.1   Management Rights Clause

Except as expressly and specifically limited or restricted by a provision of this Agreement, the Employer has and shall retain the full right to manage the business and direct the work force.  These rights shall include, but not be limited to, the management of the business; e.g., to plan, control, increase and/or decrease operations in whole or in part; to introduce new or improved methods, techniques and/or equipment; hire, transfer and lay off employees for lack of work; to add to or reduce the number of shifts; to schedule hours to be worked; and to determine the number of employees to be employed; and assign those existing employees to meet current work needs; adopt and from time to time modify, rescind, or change reasonable safety and work rules so long as such rules are not inconsistent with any existing provision of this Agreement.  The failure of management to exercise any rights contained herein shall not constitute a waiver of same.  It is further agreed that the rights specified herein may not be impaired by an arbitrator.

33

## Section 21.   TERM OF AGREEMENT

### 21.1   Term of Agreement

This Agreement shall become effective as of the first day of October, 2004, and shall continue in full force and effect until September 30, 2009. If neither party serves written notice of its desire to terminate, change or modify this Agreement sixty (60) days prior to the date of expiration, it shall be renewed for the succeeding year to year thereafter in like manner.

Dated and entered into this _____1st_____ day of October, 2004.

*For the Union:*

SERVICE EMPLOYEES UNION
LOCAL 1877

_____
Vice President, SEIU Local 1877

_____
Coordinator, SEIU Local 1877

_____
Union Negotiating Committee Member

_____
Union Negotiating Committee Member

_____
Union Negotiating Committee Member

_____
Union Negotiating Committee Member

_____
UNION NEGOTIATING COMMITTEE MEMBER

_____
UNION NEGOTIATING COMMITTEE MEMBER

*For the Employer:*

CONDOMINIUM COOPERATIVE
EMPLOYERS COUNCIL OF SAN
FRANCISCO

_____
President, Condominium Cooperative
Employers Council of San Francisco

_____
Employers' Negotiating Committee Member

_____
Condo Council Counsel

34

# ADDENDUM A

## Condominium/Cooperative Employers Council of San Francisco Membership Listing
As Approved by the Union on October 11, 2004

| Units | Building Name | Building Address |
|-------|---------------|------------------|
| 48 | GREEN HILL TOWER | 1070 Green Street<br>San Francisco, CA 94133 |
| 71 | THE NOB HILL | 1170 Sacramento St.<br>San Francisco, CA 94108 |
| 126 | FONTANA - EAST | 1000 Northpoint St<br>San Francisco, CA 94109 |
| 136 | FONTANA - WEST | 1050 Northpoint St<br>San Francisco, CA 94109 |
| 24 | THE PANORAMA | 2190 Broadway<br>San Francisco, CA 94115 |
| 58 | 1080 CHESTNUT | 1080 Chestnut St<br>San Francisco, CA 94109 |
| 114 | THE SUMMIT | 999 Green Street<br>San Francisco, CA 94133 |
| 130 | THE COMSTOCK | 1333 Jones Street<br>San Francisco, CA 94109 |
| 92 | 1200 CALIFORNIA CORP. | 1200 California St<br>San Francisco, CA 94109 |
| 255 | GRAMERCY TOWERS | 1177 California Street<br>San Francisco, CA 94108-+9 |
| 29 | 1150 SACRAMENTO | 1150 Sacramento St<br>San Francisco, CA 94108 |
| 76 | ROYAL TOWERS | 1750 Taylor<br>San Francisco, CA 94133 |

*October 2004*

## APPENDIX "B"

## INDIVIDUAL APARTMENT BUILDINGS, COOPERATIVE APARTMENTS AND CONDOMINIUMS; PROPERTY MANAGEMENT COMPANIES; CONTRACTORS

The undersigned Employer hereby agrees to all of the terms and conditions of the Collective Bargaining Agreement between the CONDOMINIUM COOPERATIVE APARTMENT EMPLOYERS COUNCIL OF SAN FRANCISCO, party of the first part, on behalf of its members at the locations listed in Addendum "A", hereinafter referred to as the "Employer", and the SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1877, with duration of October 1, 2004 through September 30, 2007. New subsections or subsections which are modified by this Appendix "B" appear below. Any contract term or condition not modified by the remainder of this Appendix "B" shall be determined by the appropriate Section or Subsection of the main body of the Agreement.

## SECTION 0. GENERAL INFORMATION

0.1   Parties to the Agreement
AGREEMENT, by and between the undersigned Apartment Building(s), Cooperative Apartment, Condominium, Property Management Company or Contractor, hereinafter referred to as the "Employer", and the SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1877, affiliated with the Service Employees International Union, AFL-CIO, party of the second part, hereinafter referred to as the "Union", acting on behalf of the Employees in the classifications specified in Section 11 below.

## SECTION 1. RECOGNITION

1.1.   Bargaining Representative
The Employer as defined in Section 0.1 recognizes the Union as the exclusive collective bargaining representative for all job classifications specified herein who are employed in either an apartment building, condominium or a cooperative apartment owned, managed or serviced by a signatory employer in the City and County of San Francisco.

## SECTION 3. SALE OF PROPERTY

3.1   Sale of Property
In the event any building covered by this Agreement is sold, leased, or transferred to another employer or merges with another corporation, the Union shall be notified of the sale or lease or merger and the Employer shall make all payments required under the terms of this collective bargaining agreement for wages, vacations, welfare and pension payments due up to and including the date of such sale, lease or merger. The Union binds itself to hold this Agreement in force to its termination and agrees that no part to this Agreement shall be assigned to any labor organization other than the Union party hereto, without

## APPENDIX "B"

## INDIVIDUAL APARTMENT BUILDINGS, COOPERATIVE APARTMENTS AND CONDOMINIUMS; PROPERTY MANAGEMENT COMPANIES; CONTRACTORS

The undersigned Employer hereby agrees to all of the terms and conditions of the Collective Bargaining Agreement between the CONDOMINIUM COOPERATIVE APARTMENT EMPLOYERS COUNCIL OF SAN FRANCISCO, party of the first part, on behalf of its members at the locations listed in Addendum "A", hereinafter referred to as the "Employer", and the SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1877, with duration of October 1, 2004 through September 30, 2007. New subsections or subsections which are modified by this Appendix "B" appear below. Any contract term or condition not modified by the remainder of this Appendix "B" shall be determined by the appropriate Section or Subsection of the main body of the Agreement.

## SECTION 0. GENERAL INFORMATION

0.1     Parties to the Agreement
        AGREEMENT, by and between the undersigned Apartment Building(s), Cooperative Apartment, Condominium, Property Management Company or Contractor, hereinafter referred to as the "Employer", and the SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1877, affiliated with the Service Employees International Union, AFL-CIO, party of the second part, hereinafter referred to as the "Union", acting on behalf of the Employees in the classifications specified in Section 11 below.

## SECTION 1. RECOGNITION

1.1.    Bargaining Representative
        The Employer as defined in Section 0.1 recognizes the Union as the exclusive collective bargaining representative for all job classifications specified herein who are employed in either an apartment building, condominium or a cooperative apartment owned, managed or serviced by a signatory employer in the City and County of San Francisco.

## SECTION 3. SALE OF PROPERTY

3.1     Sale of Property
        In the event any building covered by this Agreement is sold, leased, or transferred to another employer or merges with another corporation, the Union shall be notified of the sale or lease or merger and the Employer shall make all payments required under the terms of this collective bargaining agreement for wages, vacations, welfare and pension payments due up to and including the date of such sale, lease or merger. The Union binds itself to hold this Agreement in force to its termination and agrees that no part to this Agreement shall be assigned to any labor organization other than the Union party hereto, without

the consent of the Employer party hereto, or the signatory Employer as defined above. This provision shall have no application whatsoever to any condominium or cooperative apartment building. The only application shall be to apartment buildings which may be covered by this Agreement.

## SECTION 5. SENIORITY

G.      TRANSFERS
5.9     Transfers
An employee transferred by his/her Employer from one worksite covered under this Agreement to another worksite covered under this Agreement shall retain his/her original seniority for the purpose of all economic benefits of this Agreement. No employee shall be transferred involuntarily.

## SECTION 6. VACATIONS

6.8     Change in Ownership or Employer
H.      In the event of a change of ownership or Employer, the former owner or Employer shall be obligated to provide his/her pro rata of vacation or vacation pay and the new owner or Employer shall likewise provide his/her pro rata vacation or vacation pay for the current year but shall not be required to assume any further obligation arising prior to said change of ownership. The service record of employees for the purpose of vacations shall not be broken by reason of change of ownership of a building covered by this Agreement.

## SECTION 7. GRIEVANCE, DISCHARGE AND RETIREMENT

17.2    Precedent Setting
In any and all matters (Problem and Grievance Settlements) none shall be deemed precedent settings without the written approval of the President of the Union and/or a union representative authorized in such matters, and an authorized representative of the Employer.

**AGREED FOR THE EMPLOYER:**                    **AGREED FOR THE UNION:**

**Citiscape Property Management                 Service Employers International
Group, LLC**                                    **Union, Local 1877, AFL-CIO**

**Locations:
1000 Green, 1330 Jones,
Crest Royal Apartments (1310 Jones)**

By: _M.L. EPSTEIN_                              By: _____

Date: __05.01.05__                             Date: __4/15/05__

APPENDIX B – PAGE 2

the consent of the Employer party hereto, or the signatory Employer as defined above. This provision shall have no application whatsoever to any condominium or cooperative apartment building. The only application shall be to apartment buildings which may be covered by this Agreement.

## SECTION 5. SENIORITY

G.    TRANSFERS
5.9    Transfers
An employee transferred by his/her Employer from one worksite covered under this Agreement to another worksite covered under this Agreement shall retain his/her original seniority for the purpose of all economic benefits of this Agreement. No employee shall be transferred involuntarily.

## SECTION 6. VACATIONS

6.8    Change in Ownership or Employer
H.    In the event of a change of ownership or Employer, the former owner or Employer shall be obligated to provide his/her pro rata of vacation or vacation pay and the new owner or Employer shall likewise provide his/her pro rata vacation or vacation pay for the current year but shall not be required to assume any further obligation arising prior to said change of ownership. The service record of employees for the purpose of vacations shall not be broken by reason of change of ownership of a building covered by this Agreement.

## SECTION 7. GRIEVANCE, DISCHARGE AND RETIREMENT

17.2    Precedent Setting
In any and all matters (Problem and Grievance Settlements) none shall be deemed precedent settings without the written approval of the President of the Union and/or a union representative authorized in such matters, and an authorized representative of the Employer.

**AGREED FOR THE EMPLOYER:**

**Citiscape Property Management Group, LLC**

**Location:
Bellaire Tower (1101 Green)**

By: _____ M. L. EPSTEIN_____

Date: ___05.01.05___

**AGREED FOR THE UNION:**

**Service Employers International Union, Local 1877, AFL-CIO**

By: _____ Mal P Shaw_____

Date: ___4/15/05___

APPENDIX B – PAGE 2

## APPENDIX "F"

### INDIVIDUAL APARTMENT BUILDINGS, COOPERATIVE APARTMENTS AND CONDOMINIUMS; PROPERTY MANAGEMENT COMPANIES; CONTRACTORS

The undersigned Employer hereby agrees to all of the terms and conditions of the Collective Bargaining Agreement between the CONDOMINIUM COOPERATIVE APARTMENT EMPLOYERS COUNCIL OF SAN FRANCISCO, party of the first part, on behalf of its members at the locations listed in Addendum "A", hereinafter referred to as the "Employer", and the SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1877, with duration of October 1, 2004 through September 30, 2009. New subsections or subsections which are modified by this Appendix "B" appear below. Any contract term or condition not modified by the remainder of this Appendix "B" shall be determined by the appropriate Section or Subsection of the main body of the Agreement.

## SECTION 0. GENERAL INFORMATION

0.1   Parties to the Agreement
AGREEMENT, by and between the undersigned Apartment Building(s), Cooperative Apartment, Condominium, Property Management Company or Contractor, hereinafter referred to as the "Employer", and the SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1877, affiliated with the Service Employees International Union, AFL-CIO, party of the second part, hereinafter referred to as the "Union", acting on behalf of the Employees in the classifications specified in Section 11 below.

## SECTION 1. RECOGNITION

1.1.   Bargaining Representative
The Employer as defined in Section 0.1 recognizes the Union as the exclusive collective bargaining representative for all job classifications specified herein who are employed in either an apartment building, condominium or a cooperative apartment owned, managed or serviced by a signatory employer in the City and County of San Francisco.

1.5   New sites.  The Parties agree that, as of the date of signing this Agreement, the only apartment building, condominium or cooperative apartment for which the Employer provides services under the job classifications of this Agreement is 150 Lombard Street in San Francisco.  Should the Employer at any time begin providing services under the job classifications included in this Agreement for another apartment building, condominium or cooperative apartment, the Parties will meet to negotiate a phase-in agreement of no longer than one year for that new site.  After one year the new site must be up to the standards of this Agreement.

## SECTION 3. SALE OF PROPERTY

3.1   Sale of Property

In the event any building covered by this Agreement is sold, leased, or transferred to another employer or merges with another corporation, the Union shall be notified of the sale or lease or merger and the Employer shall make all payments required under the terms of this collective bargaining agreement for wages, vacations, welfare and pension payments due up to and including the date of such sale, lease or merger. The Union binds itself to hold this Agreement in force to its termination and agrees that no part to this Agreement shall be assigned to any labor organization other than the Union party hereto, without the consent of the Employer party hereto, or the signatory Employer as defined above. This provision shall have no application whatsoever to any condominium or cooperative apartment building. The only application shall be to apartment buildings which may be covered by this Agreement.

## SECTION 5. SENIORITY

G.   TRANSFERS

5.9   Transfers

An employee transferred by his/her Employer from one worksite covered under this Agreement to another worksite covered under this Agreement shall retain his/her original seniority for the purpose of all economic benefits of this Agreement. No employee shall be transferred involuntarily.

## SECTION 6. VACATIONS

6.8   Change in Ownership or Employer

H.   In the event of a change of ownership or Employer, the former owner or Employer shall be obligated to provide his/her pro rata of vacation or vacation pay and the new owner or Employer shall likewise provide his/her pro rata vacation or vacation pay for the current year but shall not be required to assume any further obligation arising prior to said change of ownership. The service record of employees for the purpose of vacations shall not be broken by reason of change of ownership of a building covered by this Agreement.

## SECTION 7. GRIEVANCE, DISCHARGE AND RETIREMENT

17.2   Precedent Setting

In any and all matters (Problem and Grievance Settlements) none shall be deemed precedent settings without the written approval of the President of the

Union and/or a union representative authorized in such matters, and an authorized representative of the Employer.

**AGREED FOR THE EMPLOYER:**

**Genesis Building Services
150 Lombard Street**

By: _____

Date: _____

**AGREED FOR THE UNION:**

**Service Employees International
Union, Local 1877, AFL-CIO**

By: _____

Date: _____

COLLECTIVE BARGAINING AGREEMENT
BETWEEN
CONDOMINIUM COOPERATIVE EMPLOYERS COUNCIL
OF SAN FRANCISCO
AND
SERVICE EMPLOYEES INTERNATIONAL UNION
LOCAL 1877
AFL-CIO

Change Section 0.2 **Parties to the Agreement** to read:

AGREEMENT by and between GENESIS BUILDING SERVICES, INC., Party of the first part, hereinafter referred to as the "Employer", and the SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1877, Affiliated with the Service Employees International Union, AFL-CIO, Party of the second part, hereinafter referred to as the "Union", acting on behalf of the Employees in the classifications specified in Section 11 below, employed at 150 Lombard Street, San Francisco, CA.

Change Section 1.1 **Bargaining Representative** to read:

The Employer, Genesis Building Services, Inc. recognizes the Union as the exclusive collective bargaining representatives for all job classifications specified herein who are employed by the Company.

**APPENDIX "B"**

Change Section 0.1 **Parties to the Agreement** to read the same as Section 0.2, above.

Change Section 1.1 **Bargaining Representative** to read the same as Section 1.1, above.

AGREED FOR THE EMPLOYER:                 AGREED FOR THE UNION:

Genesis Building Services                 Service Employees International Union,
150 Lombard Street                        Local 1877, AFL-CIO

By:_____                       By:_____
   Robert Viola                              Mary Anne Hohenstein

Date:_____                     Date:_____1/22/07_____

## MEMORANDUM OF AGREEMENT

This Memorandum of Agreement is entered into this __19__ day of __Dec 2006__, by and between SEIU Local 1877 (hereinafter "Union") and the Clay-Jones Homeowners Association (hereinafter "Clay-Jones HOA"). The purpose of this Memorandum of Agreement is to comply with the provisions of Section 10 of that Settlement Agreement dated September 27, 2005 by and between SEIU Local 1877 and the Clay-Jones Homeowners Association.

Accordingly, it is hereby agreed between the Parties to this Memorandum of Agreement as follows:

1. The Clay-Jones HOA agrees to recognize the Union as the exclusive bargaining representative for the "Handyperson" job classification employed at 1250 Jones St. San Francisco, CA 94109.

2. The Clay-Jones HOA agrees to recognize and be bound by the terms and conditions of that Collective Bargaining Agreement between the Condominium Cooperative Apartment Employers Council of San Francisco and SEIU Local 1877 dated October 1, 2004 through September 30, 2009.

3. The terms and conditions of that Collective Bargaining Agreement between the Condominium Cooperative Apartment Employer Council of San Francisco and SEIU Local 1877 dated October 1, 2004 through September 30, 2009 shall apply solely, exclusively and only to the "Handyperson" job classification located at 1250 Jones St. San Francisco, CA 94109.

_____       12/19/06
On behalf of SEIU Local 1877            Date

_____       12/19/06
On behalf of Clay-Jones Homeowners Association      Date

Sep-27-2005  08:22pm   From-SEIU Local18   'acto         C    9164970806          T-822  P.002/002  F-636

## LETTER OF UNDERSTANDING

This Letter of Understanding is entered into this _____ day of September 2005 by and between SEIU Local 1877 and CitiScape Property Management wherein CitiScape Property Management hereby agrees that during the term of that Collective Bargaining Agreement by and between SEIU Local 1877 and the Condominium Cooperative Employers Council of San Francisco dated October 1, 2004 – September 30, 2009, and during the negotiations for the successor agreement to that Collective Bargaining Agreement, CitiScape Property Management will not initiate the subject of outsourcing (subcontracting) of Doorperson job duties with the properties it manages who are under a collective bargaining relationship with SEIU Local 1877.

_____          9/27/2005
On behalf of SEIU Local 1877                Date


_____          _____
On behalf of CitiScape Property Management      Date

                                            9/27/05



SEIU
Stronger Together

**San Francisco Office**
45 Polk St., 2nd Floor
San Francisco, CA 94102
(415) 552-1301
Fax: (415) 552-1307

San Jose Office
1010 Ruff Dr.
San Jose, CA 95110
(408) 280-7770
Fax: (408) 280-7804

Oakland Office
8105 Edgewater Dr.
Suite 235
Oakland, CA 94621
(510) 261-6600
Fax: (510) 261-1972

Sacramento Office
1401 21st St., Suite 310
Sacramento, CA 95814
(916) 498-9505
Fax: (916) 497-0806

Los Angeles Office
1247 W. 7th St.
L.A., CA 90017
(213) 680-9567
Fax: (213) 488-0328

Orange County Office
1516 N. Sycamore St.
Santa Ana, CA 92701
(714) 245-9700
Fax: (714) 245-9710

San Diego Office
4265 Fairmount Ave.
Suite 260
San Diego, CA 92105
(619) 641-3050
Fax: (619) 641-3055

SERVICE EMPLOYEES
INTERNATIONAL UNION

June 20, 2007

Kevin Wiley
President
Citiscape Property Management Group, LLC
3450 Third St. Suite 1-A
San Francisco, CA 94124-1444
FAX 415-695-2999

Dear Kevin Wiley:

Due to Citiscape's refusal to abide by the provisions of the Collective Bargaining Agreement between the Condominium Cooperative Employers Council of San Francisco and SEIU Local 1877, the Union is hereby filing a grievance for violations of said CBA.

As Section 1.1 of Appendix B, to which Citiscape is signatory, states:

> The Employer....recognizes the Union as the exclusive collective bargaining representative for all job classification specified herein who are employed in either an apartment building, condominium or a cooperative apartment owned, managed or serviced by a signatory employer in the City and County of San Francisco.

In having signed Appendix B of said Collective Bargaining Agreement, Citiscape is in violation of the *Subcontractors and Contractors* clause (Section 1.4) at 150 Lombard St, as subcontractor Super Clean has refused to hire the affected employees and is furthermore not abiding by the economic and non-economic provisions of the CBA.

Because of the aforementioned, your company is in violation of the Collective Bargaining Agreement. The affected employees must be returned to work to their original positions at Telegraph Landing, and experience no change in wages, seniority, benefits, or schedule. If you are not able to do so immediately, please contact the Union to arrange a meeting to resolve this matter.

Sincerely,

Colin O'Leary
Union Representative
Allied Division, San Francisco

**EXHIBIT B**



WESTERN MANAGEMENT ALLIANCE
AND ITS AFFILIATED ASSOCIATIONS

HEAD OFFICE: 7557 GOSSAMER WIND, LAS VEGAS, NV 89139
(702) 407-1855 • FAX (702) 407-2551 • CELL: (415) 515-1914

Mr. Colin O'Leary
Representative
SEIU Local 1877
45 Polk St., 2nd Floor
San Francisco, CA 94102

June 27, 2007

Re: Citiscape Property Management

Dear Mr. O'Leary:

Thank you for your response to my inquiry of June 24, 2007. However, in reviewing the proffered document, it appears as if the document you are relying upon does not support your alleged grievance or stated position.

Specifically, in rebuttal of your stated position, I would refer you to the Preamble of the document headed "Appendix B" "Individual Apartment Buildings, Cooperative Apartments and Condominiums; Property Management Companies; Contractors" A review of the Preamble Section of "Appendix B" clearly states that the application of the document applies to "…locations listed in Addendum A." While there is no Addendum A attached to "Appendix B," it is clear from a reading of page 2 of the Appendix (immediately above the left hand signature space) that the application of the document in question is limited to 1000 Green, 1330 Jones and Crest Royal Apartments (1310 Jones) and specifically not to any other property managed by Citiscape Property Management.

In addition, as a participant in the 2005 negotiations leading up to the "Appendix B" document, it is my position that the document clearly was intended to apply solely and exclusively to the three listed properties and had no application to other Citiscape managed properties.

Further as you should be aware, Citiscape Property Management was not and is not a member of the Condominium Cooperative Employers Council, and therefore not bound by the terms of a "master" Collective Bargaining Agreement the Council may have entered into with Local 1877. Additionally, Citiscape Property Management does not have a "master contract" with SEIU Local 1877 covering all of the properties under Citiscape management. Finally, Citiscape Property Management is not a signatory to any agreement with SEIU Local 1877 pertaining to the Telegraph Landing Homeowners

EXHIBIT C

Association, nor the Employer of persons who may have worked at 150 Lombard St., San Francisco, CA.

Accordingly, as set forth above, it is the position of Citiscape Property Management that there has been no violation of any applicable contractual relationship that may exist between Citiscape Property Management and SEIU Local 1877.

Should you wish to further discuss this matter, please do not hesitate to contact me at (415) 515-1914 to arrange for a mutually agreeable date and time to meet. However, I wish to make it perfectly clear that by agreeing to meet Citiscape Property Management is specifically not admitting or implying that there exists a bona fide grievance or contractual violation of any agreement or document that may exist between SEIU Local 1877 and Citiscape Property Management.

Very truly yours,

D. N. Cornford
CC: Kevin Wiley
    Ed Dale

**Barbara Gorin**

| | |
|---|---|
| **From:** | Barbara Gorin |
| **Sent:** | Wednesday, February 20, 2008 4:25 PM |
| **To:** | 'edale@citiscapesf.com' |
| **Cc:** | Mark Sharwood (E-mail); Mary Anne Hohenstein (E-mail); Daniel Boone; Kristina Hillman |
| **Subject:** | SEIU Local 1877/Citiscape |

       

FMCS PanelRe          FMCS
Citiscape_v1.PDF    osCitiscape_v1.PI

|   | e: | SEIU Local 1877 |
|---|---|---|
| | Citiscape | |
| | Violation of Union Recognition | |

Dear Mr. Dale:  Attached to this email is a FMCS panel I requested.  Once you or your representative has had a chance to review the list, please contact me so that we can strike name and select an Arbitrator.  I look forward to your reply.
Sincerely,
Barbara Gorin
Arbitration Department
Weinberg, Roger & Rosenfeld
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, CA  94501-1091
510.337.7326 - direct
510.337.1023 - fax
bgorin@unioncounsel.net

**EXHIBIT D**

### PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is Seyfarth Shaw LLP, 560 Mission Street, Suite 3100, San Francisco, California 94105.  On February 11, 2009, I served the within documents:

### NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT

☐ I sent such document from facsimile machine (415) 397-8549 on February 11, 2009.  I certify that said transmission was completed and that all pages were received and that a report was generated by facsimile machine (415) 397-8549 which confirms said transmission and receipt.  I, thereafter, mailed a copy to the interested party(ies) in this action by placing a true copy thereof enclosed in sealed envelope(s) addressed to the parties listed below.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by placing the document(s) listed above, together with an unsigned copy of this declaration, in a sealed Federal Express envelope with postage paid on account and deposited with Federal Express at San Francisco, California, addressed as set forth below.

☐ by placing the document(s) listed above, together with an unsigned copy of this declaration, in a sealed Federal Express envelope with postage paid on account and deposited with Federal Express at San Francisco, California, addressed as set forth below.

☐ by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

Antonio Ruiz
Weinberg, Roger & Rosenfeld
1001 Marina Village Parkway, Suite 200
Alameda, Ca 94501
Telephone:  (510) 337-1001
Facsimile:  (510) 337-1023

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court whose direction the service was made.

Executed on February 11, 2009, at San Francisco, California.

Denise L. Quintana

SF1 28347098.1