UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1877,<br><br>　　　　Petitioner,<br><br>　vs.<br><br>CITISCAPE PROPERTY MANAGEMENT GROUP LLC; DOES I THROUGH X,<br><br>　　　　Respondents. | Case No. C 09-0608 SBA<br><br>**ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT**<br><br>Docket 39, 42 |

　　　　Petitioner Service Employees International Union, Local 1877 ("Petitioner" or "the Union") filed the instant action in state court to compel arbitration of a grievance it submitted against Citiscape Property Management Group LLC ("Respondent" or "Citiscape") in 2007. Respondent removed the action to this Court on the ground that it arises under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. See 28 U.S.C. §§ 1331, 1441. The parties are presently before the Court on Petitioner and Respondent's cross-motions for summary judgment. Having read and considered the papers submitted in connection with this matter and being fully informed, the Court hereby GRANTS Respondent's motion and DENIES Petitioner's motion. Pursuant to Federal Rule of Civil Procedure 78(b), the Court adjudicates the instant motion without oral argument.

**I.　BACKGROUND**

　　**A.　THE UNDERLYING GRIEVANCE**

　　Citiscape is a property management company that manages a number of residential properties in San Francisco, California, including a condominium complex located at 150 Lombard Street ("150 Lombard"). (Wiley Decl. ¶ 1.) 150 Lombard is controlled by the

Telegraph Landing Homeowners Association ("Telegraph Landing"). Citiscape is Telegraph Landing's property manager for 150 Lombard. (Id.) Beginning in 2006, Telegraph Landing contracted with Genesis Building Services ("Genesis"), a union employer, to provide janitorial services at 150 Lombard. (Spero Decl. ¶ 2.) Among the Genesis employees who worked at that site were David Jo'se ("Jo'se") and Douglas Poessy ("Poessy"). (Id. Ex. A at 4.) On June 12, 2007, Telegraph Landing decided to replace Genesis with SuperClean Building Services ("SuperClean"), a non-union janitorial service, and directed Citiscape to provide Genesis with notice of the termination. (Wiley Decl. ¶ 5.) SuperClean declined to retain Jo'se and Poessy as employees.

On June 20, 2007, the Union submitted a grievance (in the form of a letter) to Citiscape, as the property manager of 150 Lombard, alleging that it violated Section 1.4 of the Collective Bargaining Agreement ("CBA") based on SuperClean's decision not to retain Jo'se or Poessy. (Cornford Decl. Ex. A.) Section 1.4 requires "Employers" who contract out certain types of work at the locations specified in the CBA to maintain the employment of previously-hired union employees. (Wiley Decl. Ex. E. § 1.4.) The Union demanded that the "affected employees . . . be returned to work to their original positions at [150 Lombard], and experience no change in wages, seniority, benefits, or schedule." (Cornford Decl. Ex. A.)

Citiscape responded to the Union's grievance by taking the position that it is not a signatory to and is not otherwise bound by the CBA with regard to labor disputes involving 150 Lombard. (Pet. ¶ 6.) As a result, the Union sought to submit the grievance to arbitration, pursuant to section 17 of the CBA.[1] Citiscape apparently failed to respond to the Union's demand for arbitration, which led the Union to file the instant Petition to Compel Arbitration in state court. Citiscape removed the action to federal district court on

---

[1] Section 17 of the CBA sets forth a three-step grievance resolution process. A grievance is defined as "any difference between the Employer and the Union involving the meaning or application of the specific provisions of [the CBA]." (Cornford Decl. Ex. B § 17.1(1).) Step 1 requires a meeting between the parties in an attempt to resolve the dispute. Step 2 requires a referral to a Board of Adjustment. (Id. § 17.1(2).) Finally, Step 3 requires the parties to meet in impartial arbitration. (Id. § 17.1(3).)

February 11, 2009, on the ground that the Union's Petition is governed by Section 301 of the LMRA.  (Docket 1.)  The Union and Citiscape subsequently filed cross-motions for summary judgment, which have been fully briefed and are now ripe for adjudication.  Before reviewing the merits of the parties' respective positions, however, it is helpful to first review the circumstances surrounding the execution of the original CBA and two subsequent, related agreements; namely, Appendix B and Appendix F.

**B.  HISTORY OF THE CBA**

**1.  The CBA**

The CBA at issue was originally entered into in 2004 by the Union and the Condominium Cooperative Employers Council of San Francisco ("Employers Cooperative").  (O'Leary Decl. Ex. A.)  The CBA was effective from October 1, 2004 to September 30, 2009.  (Id.)  Citiscape was not a member of the Employer's Cooperative during the term of the CBA, and was neither a party nor a signatory to the agreement.  (Wiley Decl. ¶ 18; Campbell Decl. Ex. J at 67:2-16.)  Rather, the "Parties to the Agreement" are identified in the CBA as "CONDOMINIUM COOPERATIVE APARTMENT EMPLOYERS COUNCIL OF SAN FRANCISCO, a party in the first part, on behalf of its members *at the locations listed in Addendum 'A'*, hereinafter referred to the 'Employer' . . . ."  (O'Leary Decl. Ex. A § 0.2 (emphasis added).)  Addendum A, which is entitled "Membership Listing," identifies twelve multi-unit buildings located throughout San Francisco, California.  (Id. at 35.)  150 Lombard is not identified in Addendum A, nor does the CBA make any reference to either Citiscape or Telegraph Landing.  (Id.)

**2.  Appendix B**

In May 2005, Citiscape agreed to become bound by the above CBA, but only with respect to four properties.  To that end, Citiscape and the Union executed two identical documents styled as Appendix B.  One agreement applies to properties identified as "1000 Green, 1330 Jones, Crest Royal Apartments (1310 Jones)," while the other applies to "Bellaire Tower (1101 Green)."  (Wiley Decl. Ex. F at 2.)  The property at 150 Lombard is *not* listed in Appendix B nor is there any mention of Telegraph Landing.  Appendix B,

1  which is a two page document, was drafted by Union representative Mark Sharwood.
2  (Campbell Decl. Ex. K at 35:4-5.)  Douglas Cornford, Chief Executive Officer of Western
3  Management Alliance, a company hired by Citiscape to represent it in contract matters with
4  the Union, participated in the negotiations that led to Appendix B.  (Cornford Decl. ¶¶ 1, 2,
5  10.)  The Union assured Mr. Cornford that Appendix B was not intended to be a master
6  agreement and that it would apply only to the specific properties listed above the signature
7  line of the agreement.  (Id. ¶ 10; Wiley Decl. ¶ 20.)

### 3. Appendix F

On January 22, 2007, the Union and Genesis separately entered into an agreement styled as Appendix F.  (Cornford Decl. Ex. G.)  By executing Appendix F, which is essentially identical to Appendix B, Genesis agreed to be bound by the terms of the CBA with respect to services provided at 150 Lombard.  Citiscape is not a signatory or mentioned in Appendix F.  Genesis is completely separate from, and unrelated to, Citiscape.  (Wiley Decl. ¶ 3.)  In addition, Citiscape never employed Jo'se or Poessy nor did it authorize Genesis to hire or otherwise direct the activities of these individuals.  (Spero Decl. ¶ 5; Wiley Decl. ¶¶ 8-9.)  As will be discussed below, the principal issue is whether Appendix B incorporated Appendix F by reference, such that Citiscape is now bound by the CBA with respect to 150 Lombard.

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("the Act"), parties bound by an arbitration agreement may bring a petition in federal district court to compel arbitration.  9 U.S.C. § 4.  "The court's role under the Act is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. . . .  If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms."  Id.  Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  AT&T Techs., Inc. v. Comm'ns Workers, 475 U.S. 643,

648-49 (1986) (internal citations and quotations omitted).  The question of whether parties have agreed to submit to arbitration is for the court to decide.  <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 83 (2002).

## III.   DISCUSSION

### A.   APPLICATION OF APPENDIX F AND APPENDIX B

The Union contends that Citiscape violated section 1.4 of the CBA as a result of *SuperClean's* decision not to retain two of Genesis' employees after it became the janitorial service provider at 150 Lombard.  Section 1.4 states, in pertinent part, that:

> All contractors or subcontractors performing work of the classifications listed in this Agreement [i.e., the CBA] *at any location listed in this Agreement* shall comply with all the economic and non-economic provisions thereof.   In the event that any Employer contracts out any work covered under this Agreement, the incoming contractor shall hire all of the affected employees . . . and record their original seniority for all purposes.
> . . . .
> . . . .
> "Contractor" for purposes of this Section shall include other entities such a property management companies which become the Employer for affected employees.

(Wiley Decl. Ex. E § 1.4 (emphasis added).)  According to the Union, Citiscape, as property manager for 150 Lombard, was obligated to maintain the employment of all Genesis janitorial employees when Telegraph Landing changed to SuperClean.  The Union contends that its grievance, based on Citiscape's alleged violation of section 1.4, is subject to arbitration under section 17 of the CBA.

The Union does not dispute that the CBA, standing alone, is inapplicable to Citiscape with respect to labor disputes involving 150 Lombard.  Rather, the Union argues that both Citiscape and 150 Lombard became subject to the CBA by virtue of Appendix F and Appendix B.  In particular, the Union argues that when Genesis executed Appendix F, 150 Lombard became a property subject to the terms and conditions of the CBA. Though conceding that Citiscape did not execute and was not a party to Appendix F, the Union posits that Appendix B—which was signed by Citiscape—incorporates by reference the

provisions of Appendix F.  Stated another way, 150 Lombard allegedly became a property subject to the CBA upon Genesis' execution of Exhibit F, and Citiscape became subject to the CBA with respect to all properties subject to that agreement, including 150 Lombard, as result of signing Appendix B.

The Court is unpersuaded by the Union's tortured interpretation of the CBA and the Appendices in dispute.  Despite the Union's assertions to the contrary, Appendix F did not convert 150 Lombard into a property subject to the CBA *for all purposes.*  Rather, Appendix F is nothing more than an agreement *by Genesis* to be bound by the terms of the CBA as an "Employer" with respect to its employees working at 150 Lombard. (Wiley Decl. Ex. G at 3.)[2]  Appendix F does not state that Citiscape—who is neither a party nor signatory to Appendix F—*also* became an Employer under the CBA.  Nor would such an interpretation make any logical sense, given that there is no evidence that Genesis had the requisite authority to bind Citiscape to the CBA in any event.

As to Appendix B, there is no provision in that agreement that expressly or impliedly incorporates or adopts the provisions Appendix F.  Appendix B and Appendix F are separate agreements which impose independent contractual obligations on their respective signatories.  Appendix B does nothing more than obligate Citiscape to comply with the CBA only as to the four enumerated properties—which does *not* include 150 Lombard.  The plain terms of Appendix B are consistent with Citiscape's understanding and intent that the agreement would not apply to any other properties managed by Citiscape, aside from those expressly indicated therein.  (Cornford Decl. ¶ 10; Wiley Decl. ¶ 20.)

Citing Kemmis v. McGoldrick, 706 F.2d 993, 996 (9th Cir. 1983), the Union argues that the "bargaining history" preceding the execution of Exhibit B cannot be considered

---

[2] Thus, for instance, if Genesis decided to hire a subcontractor to fulfill its contractual obligations to Telegraph Landing to provide janitorial services at 150 Lombard, Genesis would be required under section 1.4 of the CBA to ensure that the subcontractor hired all of Genesis' employees.  Appendix F imposes no such obligation on either Citiscape or Telegraph Landing.

1  where the contract language is unambiguous.  (Pl.'s Reply at 4-5.)  <u>Kemmis</u> does not recite
2  this proposition.  To the contrary, <u>Kemmis</u> interpreted the CBA after considering evidence
3  pertaining to related agreements, as well as the practice, usage and custom of disputed
4  terms.  706 F.3d at 996; <u>accord</u> <u>Children's Hosp. Med. Ctr. of N. Cal. v. Cal. Nurses Ass'n</u>,
5  283 F.3d 1188, 1195 (9th Cir. 2002) (reviewing extrinsic evidence "as part of our effort to
6  construe a collective bargaining agreement").  But even if the Court were to disregard the
7  evidence concerning Citiscape's understanding regarding Appendix B, the terms of
8  Appendix B make it clear that it does not impose any obligations upon Citiscape under the
9  CBA with respect to 150 Lombard.

10  In its reply brief, the Union argues that under section 1.1 of Appendix B, Citiscape
11  agreed to recognize the Union as the exclusive bargaining agent with respect to any San
12  Francisco property managed by Citiscape, and that in doing so, Citiscape became an
13  "Employer" for all properties identified in the CBA, including any additional properties
14  identified in subsequent Appendices.   (Respt.'s Reply at 3.)  The Court need not consider
15  new arguments presented in a reply brief.  <u>See</u> <u>In re Rains</u>, 428 F.3d 893, 902 (9th Cir.
16  2005).  That notwithstanding, the Court finds the Union's position untenable.  Appendix B
17  provides that Citiscape is an Employer with respect to "Locations:  1000 Green, 1330
18  Jones, Crest Royal Apartments (1310 Jones)" and "Bellaire Tower (1101 Green)."  (Wiley
19  Decl. Ex. H at 2.)  If, as the Union suggests, Appendix B were intended to require Citiscape
20  to comply with the CBA with respect to *any* property it manages in San Francisco, it would
21  have been unnecessary for Citiscape and the Union to specifically identify the property
22  locations to which Appendix B was to govern.  The fact that the parties chose to
23  specifically identify the subject properties further supports the conclusion that Citiscape
24  never intended or agreed for the CBA to apply to 150 Lombard.

25  **B.  SECTION 1.4 OF THE CBA**

26  Finally, even if the CBA applied to Citiscape as to 150 Lombard, the Court is not
27  persuaded that Citiscape qualifies as an "Employer" within the meaning of section 1.4 of
28  the CBA.  According to the Union, section 1.4 applies to "Contractors," which includes

1  "property management companies."  (Pl.'s Opp'n at 7.)  However, the fact that Citiscape is
2  a property manager does not ipso facto establish that it also is an Employer.  The last
3  paragraph of section 1.4 clarifies that a Contractor subject to the CBA includes property
4  management companies "*which become the Employer* of affected employees."  (Wiley
5  Decl. Ex. E § 1.4 (emphasis added).)  The Union never articulates how Citiscape became an
6  Employer.  To the contrary, the record presented confirms that Citiscape functioned solely
7  as a property manager for 150 Lombard, and never employed Jo'se or Poessy or any other
8  of Genesis' janitorial employees who worked at that property.  (Spero Decl. ¶ 2; Wiley
9  Decl. ¶¶ 3, 8, 10, 11; Campbell Decl. Ex. I at 104:1-107:8; id. Ex. J at 121:10-19.)

## IV.  CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Citiscape's motion for summary is GRANTED and the Union's motion for summary judgment is DENIED.  Final judgment shall be entered in favor of Citiscape.  The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated: September 1, 2010         _____
                                 SAUNDRA BROWN ARMSTRONG
                                 United States District Judge